UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-22640-JEM

MACK WELLS and MAURICE
SYMONETTE,

     Plaintiffs,

v.

U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR RASC 2005 AHL3, *et
al.*,

     Defendants.

_____/

**DEFENDANTS U.S. BANK, NATIONAL ASSOCIATION
AS TRUSTEE FOR RASC 2005AHL3 AND MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT**

Defendants U.S. Bank, National Association as Trustee for RASC 2005AHL3 ("U.S. Bank") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, the "Defendants"), by and through below counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully moves this Court to dismiss the Amended Complaint ("Amended Complaint") [D.E. 16] with prejudice, filed by Plaintiffs, MACK WELLS ("Wells") and MAURICE SYMONETTE ("Symonette") (collectively, the "Plaintiffs"), and in support, states as follows

## I.   <u>INTRODUCTION</u>

The primary basis for the instant lawsuit surrounds a state court foreclosure action involving property commonly described as 15020 South River Drive, Miami, FL 33167 (the "Property"), which is pending in the Circuit Court in and for Miami-Dade County, Florida, and bears Case No. 2010-CA-061928 ("Current Foreclosure"). Although not formal parties to the Current Foreclosure, both Symonette and Wells are listed on the associated case docket based on their countless

appearances and various documents they filed therein. Although Plaintiffs and various individuals affiliated with them have attempted to challenge the validity of the claims asserted by U.S. Bank in the Current Foreclosure in the form of frivolous motions, appeals and collateral lawsuits, every court has outright rejected these challenges over the last thirteen (13) years of litigation. Plaintiffs' Amended Complaint should be treated no differently, as this latest attempt is nothing more than a continuation of meritless actions undertaken by Plaintiffs to impede U.S. Bank's ability to exercise its rights pursuant to the appliable note and mortgage. In fact, the Amended Complaint should be summarily dismissed as a shotgun pleading since it intermingles allegations, neglects to identify the parties that each of the fourteen (14) counts are directed at, fails to plead with the requisite particularity needed to assert claims and simply asserts legal conclusions that do not meet the pleading standards of this Honorable Court. Moreover, this matter should be dismissed with prejudice pursuant to the *Rooker-Feldman* and *Younger* abstention doctrines. Even if the Court decides to look beyond the foregoing bases for dismissal, the causes of action asserted in the Amended Complaint woefully fail to state a cause of action upon which relief can be granted. As such, Defendants' respectfully request that the instant lawsuit is dismissed with prejudice.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  FACTS SURROUNDING LOAN

On or about June 30, 2005, Leroy Williams ("Borrower") executed and delivered an Interest Only Adjustable Rate Note ("Note") to Axiom Financial Services. On that same day, Borrower executed and delivered a Mortgage ("Mortgage") to MERS as mortgagee as nominee for Axiom Financial Services, its successors, and assigns, which secured the Note. Subsequently, on July 29, 2005, the Mortgage was recorded in Official Records Book 23623, Page 3231 of the Public Records of Miami-Dade County, Florida. The Note was specifically endorsed from the original lender to

Residential Funding Corporation, and then from Residential Funding Corporation to U.S. Bank National Association as Trustee.

On October 21, 2008, MERS executed an Assignment of Mortgage, which assigned the Mortgage to U.S. Bank. The Assignment of Mortgage was recorded in Official Records Book 26657, Page 3525 of the Public Records of Miami-Dade County, Florida. On February 14, 2012, MERS executed a Corrective Assignment of Mortgage, which was recorded for the express purpose of correcting the original lender's name in the original assignment. The Corrective Assignment of Mortgage was recorded in Official Records Book 28033, Page 1695 of the Public Records of Miami-Dade County, Florida.

**B.  CURRENT FORECLOSURE**

On December 6, 2010, U.S. Bank commenced the Current Foreclosure to reform and foreclose the subject Mortgage. The copy of the Note attached to U.S. Bank's complaint included an allonge with a special endorsement to U.S. Bank National Association as Trustee. On February 7, 2014, U.S. Bank moved for leave of court to amend its Complaint to add new parties and a cause of action for equitable lien, which was ultimately granted by the trial court. On November 17, 2017, Symonette, who was not a signatory to the Note or Mortgage, along with another defendant, filed an "Amended Motion to Dismiss this Case with Prejudice and Stop this Insane Jury Trial and Request for Hearing" (the "Amended Motion"). Symonette's Amended Motion put forth arguments relating to lack of standing and res judicata in connection with the dismissal of a prior foreclosure. Non-jury Trial in Current Foreclosure

On November 29, 2017, the Current Foreclosure proceeded to a non-jury trial. At the conclusion of U.S. Bank's case-in-chief, Symonette moved for a directed verdict solely on the grounds that U.S. Bank could not proceed with the foreclosure due to the dismissal of the prior foreclosure with prejudice. At the close of trial, the court entered an order deferring its ruling

pending further briefing by U.S. Bank on its ability to proceed with this case in light of the dismissal of the Prior Foreclosure. U.S. Bank was directed to submit a post-trial memorandum on the issues of standing and dismissal of the Prior Foreclosure. Symonette was given 5 days from the date of U.S. Bank's brief to file their response.

After the trial, the court entered an order denying Symonette's Amended Motion, which he almost immediately appealed. On December 13, 2017, U.S. Bank submitted its Trial Memorandum to the court. Copies of the Trial Memorandum were served on the *pro se* defendants, including Symonette via U.S. Mail, consistent with the method of service of court documents that was utilized throughout the lawsuit. On December 19, 2017, the court entered a Final Judgment of Foreclosure (the "Judgment") in favor of U.S. Bank, which also reformed the legal description of the Mortgage and granted U.S. Bank a superior equitable lien against all defendants. The Judgment set a foreclosure sale for January 30, 2018. However, Symonette and Wells, along with other individuals, moved to cancel the scheduled sale and appealed the Final Judgment of Foreclosure. Notwithstanding the foregoing, the court denied the request and rescheduled the sale for March 19, 2018. Symonette moved the court for reconsideration, but the request was denied. To prevent the foreclosure sale from proceeding, two other defendants in the Current Foreclosure commenced a bankruptcy proceeding. However, on April 4, 2018, the bankruptcy court dismissed the bankruptcy proceeding. In response, the court rescheduled the foreclosure sale for November 13, 2018.

Eventually, the appeals were consolidated, and on October 24, 2018, the Third District Court of Appeal issued an Opinion affirming the trial court's denial of the Amended Motion and entry of the Judgment in favor of U.S. Bank. To combat the scheduled sale, another defendant commenced a bankruptcy proceeding on November 13, 2018. As a result of the bankruptcy being filed on the day of the foreclosure sale, the sale inadvertently went forward. On December 28, 2018, the court entered an order vacating the foreclosure sale. On January 24, 2019, the latest bankruptcy

proceeding was dismissed so U.S. Bank moved the court to reschedule the foreclosure sale. On February 25, 2019, the court entered an order in the Current Foreclosure rescheduling the sale for April 16, 2019. However, on April 15, 2019, another defendant once again commenced a bankruptcy proceeding to have the foreclosure sale cancelled. In response, U.S. Bank moved the bankruptcy court for stay relief and, on September 22, 2019, an order was entered granting stay relief and finding that the most recent bankruptcy "was part of a scheme to delay, hinder, or default creditors, which involved multiple bankruptcy filings affecting the Property."

Once relief from the automatic stay was granted, U.S. Bank again moved the court to reschedule the sale and it was scheduled for December 11, 2019. Although the Judgment had been entered in favor of U.S. Bank and affirmed by the Third District Court of Appeal, Symonette filed a Motion to Dismiss Foreclosure Complaint on November 6, 2019. On November 7, 2019, Symonette filed an Amended Motion to Dismiss Foreclosure Complaint. The court heard argument on Symonette's Amended Motion to Dismiss and entered an order denying the motion on November 19, 2019. On the very same day, Symonette filed another motion titled "MOTION TO DISMISS FORECLOSURE THAT JUDGE SAID HE WOULD CONSIDER," which again attacked standing. Thereafter, on December 2, 2019, Symonette filed a Motion to Reconsider and Rehearing in relation to the denial of his Amended Motion to Dismiss.

Brazenly, on December 9, 2019, another defendant in the foreclosure filed yet another bankruptcy proceeding, which resulted in the foreclosure sale scheduled for December 11, 2019, being cancelled. The latest bankruptcy was proceeding was summarily dismissed by way of order dated December 20, 2019. On January 8, 2020, Symonette, along with another defendant, filed a motion entitled "Motion for Judge Schlesinger to have a hearing to Recuse and Vacate his Orders[.]" On February 4, 2020, an order was entered by the court denying the judicial disqualification. Thereafter, on February 5, 2020, U.S. Bank filed a motion to reschedule the

foreclosure sale. The court granted the motion to reschedule the foreclosure sale and reset same for April 20, 2020.

As a result of Florida Governor DeSantis declaring a state of emergency for the State of Florida because of COVID-19, U.S. Bank filed a Motion to Cancel and Reset Foreclosure Sale Scheduled for April 6, 2020. The motion was granted, and the foreclosure sale was rescheduled to June 24, 2020. In light of the continued pandemic, U.S. Bank filed a Motion to Cancel Foreclosure Sale Scheduled for June 24, 2020, which was granted by the court. The related order specified, "[t]he clerk is directed to reset the foreclosure sale upon further motion of Plaintiff and order of the court."

After the entry of the foregoing order, Wells and Symonette continued to file various motions, appeals and bankruptcies to stall the Current Foreclosure and prevent the sale from occurring. Given the pandemic and meritless efforts taken on the part of Wells and Symonette, the foreclosure sale was not held until October 16, 2023, at which time the Property was sold to U.S. Bank. However, it should be noted Wells and Symonette have proceeded to undertake meritless actions in the Current Foreclosure to stale the proceeding and thwart U.S. Bank's rightful prosecution of the matter including, but not limited to, objecting to the foreclosure sale.

## C.  STATE COURT QUIET TITLE ACTION

As demonstrated above, Symonette and Wells—in addition to other individuals—have unquestionably caused sever harm to U.S. Bank and MERS by causing extensive delay and preventing the Current Foreclosure from being finalized, which has in turn prevented U.S. Bank from taking legal possession of the Property. Despite not being the borrower under the subject Note and Mortgage, Symonette and Wells have been the driving forces behind the countless and relentless challenging to the Current Foreclosure as they have been involved in all aspects of the related lawsuits, appeals and bankruptcies.

Of recent importance, Symonette commenced a separate lawsuit on April 30, 2021, against U.S. Bank and MERS—as well as other entities—in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which is entitled *Maurice Symonette v. U.S. Bank National Association, et al.*, and bears Case No. 2021-010826-CA-01 ("Quiet Title Action"). Pursuant to his initial Complaint, Symonette set forth six separate causes of action, which were as follows: (1) wrongful foreclosure; (2) quiet title; (3) slander of title; (4) fraud in the concealment; (5) unjust enrichment; and (6) declaratory & injunctive. On October 8, 2021, Defendants filed a Motion to Dismiss Complaint in the Quiet Title Action, which was argued before the court on January 5, 2022. After hearing from all parties, the court dismissed the initial Complaint and gave Symonette ten (10) days from January 5, 2022, to file an amended complaint.

On January 15, 2022, Symonette filed an Amended Complaint in the Quiet Title Action, which was completely illegible since the text of each page was cut off on the right side. Thereafter, on January 21, 2022, Symonette filed another Amended Complaint ("First Amended Complaint") in the Quiet Title Action, which contained two causes of action for quiet title and wrongful foreclosure. Defendants filed a Motion to Dismiss the First Amended Complaint and the court held a hearing for the same on May 10, 2022. Then, on August 3, 2022, the court entered an Order that dismissed the First Amended Complaint without prejudice and provided Symonette an opportunity to correct the deficiencies and file another amended complaint within twenty days.

On August 23, 2022, Symonette filed a "Complaint For: Quiet Title [] Wrongful Foreclosure" (the "Second Amended Complaint") in the Quiet Title Action. The next day, August 24, 2022, Symonette filed an "Amended Complaint For: Quiet Title" and another "Amended Complaint For: Quiet Title". Then, on August 30, 2022, Symonette filed an "Amended Quiet Title Complaint for Fl. Rule 9.130 to Add Claim for Punitive Damages. Also on August 30, 2022, Symonette filed a "Motion Fl. Rule 9.130 to Add Claim for Punitive Damages" (the "Motion to

Add"). On January 12, 2023, Defendants filed a Motion to Dismiss Second Amended Complaint that was eventually argued before the court on May 26, 2023.

On June 17, 2023, the court entered an Order Granting Defendants' Motion to Dismiss Second Amended Complaint ("Order"). In pertinent part, the Order stated, "[Symonette] continues to allege conclusory facts and does not properly plead any cause of action." Additionally, and most importantly, the Order stated, "this Court will afford [Symonette] one more chance to file a property complaint which sets forth all of [Symonette]'s cause of action in a single complaint and which otherwise complies with the legal requirements for a valid complaint." In conclusion, the Order granted Defendants' Motion to Dismiss Second Amended Complaint and gave Symonette twenty (20) days from the date the Order was entered to file yet another amended complaint.

Given the time frame set forth in the Order, Symonette was required to file an amended pleading on or before July 7, 2023. Instead of complying with the Order, Symonette waited until 8:16 AM on July 19, 2023, to file an amended pleading, which he titled "Amended Complaint Quiet Title and Fannie Mae Quite Title and Violations of Judges and Officials Conflicts of Interest". Several hours thereafter, Symonette filed another pleading at 3:27 PM, which was again titled "Amended Complaint Quiet Title and Fannie Mae Quite Title and Violations of Judges and Officials Conflicts of Interest" (hereinafter referred to as "Third Amended Complaint").

Since the Third Amended Complaint did not rectify the errors contained in Symonette's prior pleadings, Defendants filed a Motion to Dismiss Third Amended Complaint with Prejudice. On December 15, 2023, the court heard arguments on the foregoing motion and took the matter under advisement. Thereafter, on January 19, 2024, the court entered an Order Granting Defendants' Motion to Dismiss Third Amended Complaint, which thereby dismissed the Quiet Title Action with prejudice.

### III. LEGAL STANDARD

With regards to a Rule 12(b)(1) motion, a defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways—a facial attack or factual attack. *3637 Corp. v. City of Miami*, 314 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018). A factual attack, such as Defendants' here, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Id*. In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On the factual sufficiency prong, the pleading standard of Fed. R. Civ. P. 8(a)(2) demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation. *Iqbal*, 556 U.S. at 677-79. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement." *Id*. When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. *Bank v. Pitt*, 928 F.2d 1108, 1109 (11th Cir. 1991). However, a court should not accept as true conclusory allegations. *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir. 1996).

"A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached Exhibits, including documents referred to in the complaint that are central to the claim." *Lage v. Ocwen Loan Servicing, LLC*, 2015 WL 631014 (S.D. Fla. Feb. 15, 2015).

The Eleventh Circuit has held that when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Bryant v. Avado Brands Inc.,* 187 F. 3d 1271, 1279-80 (11th Cir. 1999).

Further, a district court need not give a plaintiff a chance to file an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. *See Birdette v. Saxon Mortg.*, 502 Fed. Appx. 839, 841 (11th Cir. 2012).

Here, even when accepting Plaintiffs' allegations as true and construing all reasonable inferences in the light most favorable to Plaintiff, for purposes of evaluating this Motion to Dismiss, the Amended Complaint fails to state a claim against Defendants and should be dismissed with prejudice in its entirety.

## IV.  ARGUMENT

### A.  PLAINTIFFS' AMENDED COMPLAINT IS AN INCOMPREHENSIBLE SHOTGUN PLEADING

As an initial matter, Plaintiffs' Amended Complaint must be dismissed as a "shot-gun pleading." The Eleventh Circuit has identified four categories of shot-gun pleadings as follows:

> The most common type [of shot-gun pleadings]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun

> pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015); *see also Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 205 F.3d 1293, 1295 (11th Cir. 2002) (defining a shot-gun complaint as containing "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions").

More recently, the Eleventh Circuit addressed this very issue in *Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018). In *Jackson*, the Eleventh Circuit reviewed a lengthy Report and Recommendation that dismissed sixteen counts for failing to state a cognizable claim. *Id.* at 1356. The court affirmed the dismissal but based on the plaintiff's improper pleading. *Id.* The court specifically found that each allegation was incorporated into each claim "making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Id.* The court noted that, "in a case in which a party, plaintiff or defendant, files a shotgun pleading, the district court 'should strike the [pleading] and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b).'" *Id.* at 1358 (*citing Byrne v. Nezhat*, 261 F.3d 1075, 1133 n.113 (11th Cir. 2001) (*quoting Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)).

A cursory review of Plaintiffs' Amended Complaint will clearly show it contains the same errors found in relation to the complaint in *Jackson*. The subject pleading is incoherent, indecipherable and the allegations are splattered indiscriminately without delineation as to the defendants over 125 pages. Additionally, each count incorporates allegations and paragraphs that are contained within preceding counts. This is particularly of concern as all the counts do not appear to be directed at all defendants, which thereby makes it virtually impossible to frame a proper

response. Further, Plaintiffs' Amended Complaint contains numerous allegations referencing acts done by the "Defendants[.]" These references are improper since Plaintiffs fail to identify what complained actions were taken by any given defendant, including U.S. Bank and MERS, which in turn prevents the defendants from articulating responses and/or defenses. Although Plaintiffs appear to separate each count, they fail to state the requested relief for each of the claims being sought. Thus, it is impossible to determine what relief Plaintiffs are seeking pursuant to each cause of action. Considering the foregoing, Plaintiffs' Amended Complaint is a prototypical "shotgun" pleading, the type of which is not allowed in the Eleventh Circuit. Because it is not possible to meaningfully respond to such a pleading, the Amended Complaint must be dismissed.

## B.  PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In addition, a complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Further, despite Rule 8(a)'s liberal requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." *Snow v. DirecTV. Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). Further, "[a]lthough [Rule 8] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Pierson v. Orlando Reg. Healthcare Sys. Inc.*, 619 F. Supp.

2d 1260, 1273 (M.D. Fla. 2009) (quoting *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)).

Here, the Amended Complaint should be dismissed in its entirety as Plaintiffs have failed to comply with the Rule 8 pleading guidelines or to state a claim upon which relief can be granted by this Court. Further, Plaintiffs have not pled their causes with the required specificity under Rule 8 as to give "fair notice" of the claims brought. As such, Defendants have not been given "fair notice" as required by Rule 8, and the Amended Complaint should be dismissed in its entirety.

1. **Plaintiffs' Amended Complaint Fails to Assert a Claim for Quiet Title**

To the extent Plaintiffs seek to set forth a cause of action for quiet title in relation to the Property, they have failed to satisfy the requirements for asserting such a claim. It is well-established that in order to state a claim to quiet title in Florida, a party is required to not only allege plausible facts showing his or her title to the land at issue, but also plausible facts showing that a cloud on that title exists, identify and show what is clouding the title, and allege facts giving rise to the validity and invalidity of the claim. *Stark v. Frayer*, 67 So. 2d 237, 239 (Fla. 1953). "Not only must the matter which constitutes the alleged cloud be shown, but facts must be alleged which give the claim apparent validity as well as those which show its invalidity." *Id. See also McDaniel v. McElvy*, 108 So. 820, 830 (1926) ("Thus, if the suit is brought to remove a particular cloud, the facts which show the existence—actual, apparent, or potential—of that cloud are essential parts of the complainant's cause of action, and must be alleged.").

In the case at bar, Plaintiffs completely fail to allege any facts that support the elements required to assert a claim for quiet title. As outlined above, Plaintiffs were not the owners of the Property prior to the Current Foreclosure or at all related to the underlying Note and Mortgage. Since title to the Property was held in the name of the Borrower prior the Current Foreclosure, it is legally impossible for Plaintiffs to satisfy the first element for stating a claim to quiet title to real

property. Notwithstanding this, even if Plaintiffs held title to the Property, their claim would still fail as Plaintiffs have failed to allege plausible facts showing that a cloud on title exists. Rather than set forth factual allegations to properly allege a claim, Plaintiffs simply attack the validity of the Current Foreclosure and Judgment. Such an attack is without question legally insufficient to support a claim for quiet title. In light of Plaintiffs' clear and obvious failure to satisfy the required elements for asserting a claim for quiet title, Plaintiffs' Amended Complaint must be dismissed.

## C. THE COURT SHOULD ELECT TO NOT EXERCISE JURISDICTION PURSUANT TO THE *YOUNGER* ABSTENTION DOCTRINE

Dismissal of Plaintiffs' Amended Complaint is proper under the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37 (1971), since the claims asserted therein are simply an attempt to interfere with ongoing state court litigation. The Eleventh Circuit extensively analyzed the *Younger* abstention doctrine in *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), and stated it "derives from 'the vital consideration of comity between the state and national governments.'" *Id.* at 1274 (citing *Luckey v. Miller*, 976 F.2d 673, 676 (11th Cir. 1992)). Further, the court provided, "[t]he question . . . is threefold: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (citing *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

As set forth above, both Symonette and Wells have been involved and continue to litigate the Current Foreclosure, in which Judgment has been entered in favor of U.S. Bank. Moreover, as also detailed above, Symonette is pursuing a quiet title claim in his Quiet Title Action, which is before the state court and, both U.S. Bank and MERS are defendants. Accordingly, the first prong of the *Younger* abstention doctrine is clearly satisfied as the Current Foreclosure and Quiet Title Action constitute ongoing state judicial proceeding. Moreover, the relief Plaintiffs are presumable

seeking in this action would unduly interfere with two state judicial proceedings since any such relief granted by this Court would undo the Judgment entered in the Current Foreclosure and recent Order Granting Defendants' Motion to Dismiss Third Amended Complaint entered in the Quiet Title Action.

In addition, the second factor under the doctrine is met since the Current Foreclosure and Quiet Title Action implicate important state interests as many courts recognize that mortgage foreclosures and quiet title action directly involve important state interests. *See e.g., Doscher v. Menifee Circuit Court*, 75 F. App'x 996 (6th Cir. 2003) (unpublished) (affirming district court's application of *Younger* abstention and finding important state interest in mortgage foreclosure); *Huber v. GMAC Mortgage, LLC*, No. 8:11-cv-1250-T-30EAJ, 2011 WL 6020410, at \*2 (M.D. Fla. Dec. 2, 2011) (unpublished) (state mortgage foreclosure actions implicate important state interests); *Sergeon v. Home Loan Center, Inc.*, No. 3:09-CV-01113-J-32JBT, 2010 WL 5662930, at \*2-\*4 ("Florida has an important state interest in determining disputes that affect title to Florida real estate, including mortgage foreclosure actions, and in resolving such controversies unimpeded by federal interference."), *Report and Recommendation Adopted by* 2011 WL 308176 (M.D. Fla. Jan. 27, 2011). Thus, the Current Foreclosure and Quiet Title Action implicates important state interests, thereby satisfying the second factor under *Younger* abstention doctrine.

Lastly, the third factor that must be considered is whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. Plaintiffs have had adequate opportunities to raise purported constitutional challenges in both the Current Foreclosure and Quiet Title Action as well as the countless other lawsuits they commenced in relation thereto. As recognized by the Eleventh Circuit in *31 Foster Children*, the Plaintiffs have the burden of establishing that "the state proceedings do not provide an adequate remedy for [their] federal claims." 329 F.3d at 1279. Since

the Plaintiffs have and more than enough time and opportunity in the state judicial proceedings to assert any perceived constitutional challenges, the third factor has been met.

For these reasons, Plaintiffs' Amended Complaint should be dismissed per the *Younger* abstention doctrine.

**D.  THIS ACTION IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE**

Based on the allegations contained in the Amended Complaint, Plaintiffs impermissibly seek review of the Judgment entered by the State Court in the Foreclosure Action. Significantly, the *Rooker-Feldman* doctrine is the outgrowth of two United States Supreme Court cases which dictate that federal courts do not have jurisdiction to review the judgments and decisions of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Critically, "[t]he *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009); *see also Nicholson v. Shafe,* 558 F.3d 1266, 1271 (11th Cir. 2009) (federal district courts have "no authority to review final judgments of a state court"); *Doe v. Florida Bar,* 630 F.3d 1336, 1340–41 (11th Cir. 2011) (where applicable, *Rooker–Feldman* deprives federal court of subject matter jurisdiction).

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). Thus, the *Rooker-Feldman* doctrine prevents a party who had an opportunity to contest, through the state court system, the propriety of the entry of a state court judgment "from seeking

what in substance would be appellate review" from a federal district court. *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

Moreover, the *Rooker-Feldman* doctrine not only prohibits federal district courts from reviewing matters resolved in connection with the state court judgment but also those claims "inextricably intertwined" with the judgment. *Figueroa v. MERSCORP, Inc.*, 477 Fed. Appx. 558, 560 (11th Cir. 2012). Indeed, *Rooker–Feldman* analysis is a two-part inquiry: first, whether the state court proceedings have ended, and second, whether the plaintiff's claims are "inextricably intertwined" with the state court judgment. *See Velazquez v. South Fla. Fed. Credit Union*, 546 Fed. App'x 854, 856–57 (11th Cir. 2013). More specifically, such claims lie outside of federal jurisdiction when they meet the requirements outlined by the Supreme Court in *Exxon Mobil*:

> (1) [T]he federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock v. Albany County Bd. Of Elections,* 422 F.3d 77, 85 (2d Cir. 2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)).

Plaintiffs' claims in this case are "inextricably intertwined" with the Current Foreclosure, Judgment and the proceedings related thereto. A claim is inextricably intertwined with a state court judgment "if it would 'effectively nullify' the state court judgment, or it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Casale,* 558 F.3d at 1260 (quoting *Powell v. Powell,* 80 F.3d 464, 467 (11th Cir. 1996) and *Goodman ex rel. Goodman v. Sipos,* 259 F.3d 1327, 1332 (11th Cir. 2001)); *see also Figueroa v. MERSCORP, Inc.,* 766 F.Supp. 2d 1305, 1316 (S.D. Fla. 2011).

Similarly, the Eleventh Circuit and many district courts within the Eleventh Circuit have applied *Rooker–Feldman* to dismiss actions where plaintiffs were, in reality, challenging state-

foreclosure judgments. *See, e.g., Parker v. Potter,* 368 Fed. Appx. 945, 947–48 (11th Cir. 2010) (rejecting under *Rooker–Feldman* a federal claim under the Truth in Lending Act ("TILA") that sought rescission of a state foreclosure judgment); *Velardo v. Fremont Inv. & Loan,* 298 Fed. Appx. 890, 892–93 (11th Cir. 2008) (holding that appellants' federal TILA claims were inextricably intertwined with a state-court foreclosure judgment and thus barred by *Rooker–Feldman*); *Harper v. Chase Manhattan Bank,* 138 Fed. Appx. 130, 132–33 (11th Cir. 2005) (dismissing federal TILA, Fair Debt Collection Practices Act ("FDCPA"), and Equal Credit Opportunity Act ("ECOA") claims under *Rooker–Feldman* because they were inextricably intertwined with a state-court foreclosure proceeding); *AboyadeCole Bey v. BankAtl.,* No. 6:09–cv–1572–Orl–31GJK, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2, 2010) (finding the court had no jurisdiction to hear plaintiff's case under *Rooker–Feldman* because the case was, "at its core," an attempt to revisit a state-court foreclosure judgment); *Distant v. Bayview Loan Servicing, LLC,* No. 09–61460–CIV, 2010 WL 1249129, at *3 (S.D. Fla. Mar. 25, 2010) ("Although plead as conspiracy claims ..., Plaintiff is clearly asking this Court to invalidate the state court action by ruling that the state court foreclosure judgment is somehow void. Under the *Rooker–Feldman* doctrine, [defendant] is correct that this Court lacks subject matter jurisdiction, as Plaintiff seeks a *de facto* appeal of a previously litigated state court matter.").

Here, Plaintiffs' perceived claims and alleged injuries rest upon assertions that the Current Foreclosure and related Judgment were conducted and/or entered improperly. Respectfully, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine because Plaintiffs are waging a federal court collateral attack on a state court foreclosure judgment that was entered in the Current Foreclosure. Plaintiffs seemingly demand reversal of the Current Foreclosure and seek damages in relation to the state court proceeding. Damages can only be predicated upon a finding that the Judgment entered in the Current Foreclosure is erroneous. Thus, Plaintiffs' Amended Complaint is

essentially a broad base attack on the Judgment entered by the state court in the Current Foreclosure and an attempt to re-litigate and/or review the validity of the Judgment. Plaintiffs' claims fall squarely within the province of *Rooker–Feldman* because they seek relief from this Court that requires adjudging the Current Foreclosure, actions taken therein, and the resulting Judgment were all erroneous. Since Plaintiffs cannot overcome the *Rooker-Feldman* doctrine, no matter how framed or amended, all counts of the subject lawsuit must be dismissed with prejudice.

### E.  PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND AS IT WOULD BE FUTILE

Federal Rule of Civil Procedure 15(a)(2) states a court should "freely give leave" to amend a complaint "when justice so requires." However, "[a] district court need not…allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or a repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." *Patel v. Georgia Dept. BHDD,* 485 Fed. Appx. 982 (11th Cir. 2012) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

As provided for herein, the Amended Complaint is nothing more than a continuation of the meritless litigation Plaintiffs are waging against U.S. Bank and MERS with the sole intention of preventing the full resolution of the Current Foreclosure and related sale. Consistent with Plaintiffs' prior actions, this action is completely devoid of any factual allegations supporting their claims. Moreover, any claims Plaintiffs are attempting to assert against U.S. Bank and/or MERS in relation to the Current Foreclosure, Judgment, Property, or title thereto has been extensively litigated and, should this Court grant Plaintiffs leave to amend, U.S. Bank and MERS would undoubtedly suffer an undue prejudice. Therefore, this Court should not grant Plaintiffs leave to amend their claims.

## V.    CONCLUSION

For the foregoing reasons, Defendants U.S. Bank, National Association as Trustee for RASC 2005AHL3 and Mortgage Electronic Registration Systems, Inc. respectfully request the Court grant their Motion to Dismiss, dismiss Plaintiffs' Amended Complaint with prejudice and grant such other and further relief, at law or in equity, to which the Court deems Defendants to be justly entitled.

Dated: January 26, 2024

Respectfully submitted,

**BLANK ROME LLP**
100 S. Ashley Drive, Suite 600
Tampa, Florida 33602
Telephone: 813.255.2324
Facsimile: 813.433.5352
E-Service: BRFLeservice@BlankRome.com

*/s/Michael R. Esposito*
Michael R. Esposito
Florida Bar No. 37457

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on January 26, 2024, with the Clerk of the Court by using the CM/ECF System. I also certify that the foregoing document is being served this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF or the pro se parties identified below by U.S. Mail:

Maurice Symonette
15020 S. River Drive
Miami, FL 33167

Mack Wells
15020 S. River Drive
Miami, FL 33136

*/s/Michael R. Esposito*
Michael R. Esposito