# UNITED STATES  DISTRICT COURT
## SOUTHERN  DISTRICT OF FLORIDA

*statement to the Judge U.S. BANK is doing A WRIT of possession hearing today while the stay is there since Oct 13th. 23.*

FILED BY _____ D.C.

JUN 11 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MACK WELLS AND MAURICE SYMONETTE

Plaintiff,

v.

U.S. BANK NA AS TRUSTEE FOR RASC 2005 AHL3

Defendants.

Case No.23-CV-22640

**PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND ISSUANCE OF ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION.**

AMENDED INJUNCTION
PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND ISSUANCE OF ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION.

## TABLE OF CONTENTS

I.   INTRODUCTION.........................................................................................................3

II.  JURISDICTION AND VENUE...................................................................................4

III. PARTIES......................................................................................................................4

IV.  FACTS.........................................................................................................................4

   A.  The Shutdown Order...............................................................................................4

   B.  Effect on Plaintiff's Business .................................................................................5

VI.  ARGUMENT FOR THE REMEDY OF INJUNCTION............................................4

   A.  Injunction Requested ............................................................................................4,5

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

B.   Legal Standard for Injunction ..................................................................5

C.   Plaintiff Suffered Irreparable Injury ........................................................6

D.   Plaintiff Has Inadequate Remedy At Law ..............................................6,7

E.   Balance of Hardships Strongly Favors Plaintiff .....................................7,8

F.   The Requested Injunction is in the Public Interest, Denying it is Against the Public Interest ........................................................................................8

## VII. STATUTES

8 U.S.C. §1331(a)…...............................................................................4

28 U.S.C. § 2201-2202.........................................................................4

Declaratory Judgment Act; 42 U.S.C. § 1983 and 42 U.S.C. § 1988… ...............4

U.S. Constitution Amend. XIV… ...........................................................4

Fed. Rule of Civ. Pro. Rule 23… ...........................................................4

Venue is proper under 28 U.S.C. § 1391(b)…........................................4

## VIII. TABLE OF AUTHORITIES

*Sampson v. Murray, 415 U.S. 61, 88 (1974)*...........................................7

1

*Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982);*.........................................................................7

*Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)*..............................................................................7

*Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 (6th Cir. 2002)*...........8

*ACLU of KY v. McCreary County, Kentucky, 354 F.3d 438, 445 (6th Cir. 2003)*............8

*Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)*....................8

*Council of Alternative Political Parties v. Hooks, 121 F.3d 876 (3rd Cir. 1997)*............8

*Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992)*......................................8

*McDonell v. Hunter, 746 F.2d 785, 787 (8th Cir. 1984)*................................8

*Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984)*..................................8

*Doe v. Mundy, 514 F.2d 1179 (7th Cir 1975)*...........................................8

*Beerheide v. Zavaras, 997 F.Supp. 1405 (D.C. Colo. 1998)*...........................8

VII   PRAYER FOR RELIEF.............................................................10

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

2
# INTRODUCTION

(4) JUDGMENT.— the Defendant has no legal title to the land or is the equitable owner thereof based on one or more of the grounds mentioned in subsection (2), orif a default is entered against defendant (in which case no evidence need be taken), the court shall enter judgment removing the alleged cloud from the title to the land and forever quieting the title in plaintiff and those claiming under him or her since the commencement of the action and adjudging plaintiff to have a good fee simple title to said land or the interest thereby cleared of cloud FACTUAL ALLEGATIONS On or about JUNE 30 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a c credit transaction with by obtaining a $ 448,000.00 mortgage loan secured by Plaintiffs principal residence, (Subject Property). This note was secured by a First Trust Deed on the Property in favor of Axiom Financial SERVICES. In which we were making all the payments on time then one day while checking on another house in a downtown Courthouse inadvertently we find out that our home at 15020 S. River Dr. is in Foreclosure even though we were making the payments so on June 6th 2007 we did a written request formal protest and dispute of that debt Mysterious threat from an unknown Bank that On or about JUNE 30 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with by obtaining a $448,000.00 mortgage loan secured by Plaintiffs principal residence, (Subject Property). This note was secured by a First Trust Deed on the Property in favor of Axiom Financial SERVICES. In which we were making all the payments on time then one day while checking on another house in a downtown Courthouse inadvertently we find out that our home at 15020 S. River Dr. is in Foreclosure even though we were making the payments so on June 6th 2007 we did a written request formal protest and dispute of that debt

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

Mysterious threat from an unknown Bank that was Foreclosing on our Property in whom we did not sign our Mortgage or Note with we were never served and was trying to get a hearing with no response until we suddenly find out that they were getting ready to sell our property without even allowing us to respond or defend ourselves therefore 9/12/2007 we did an Emergency Motion to cancel the sale so that The Judge can see that we were making the payments and for that Bank (US BANK NA) who is unknown to us was able to show us that they own the Note and we pointed out to the Judge in front of about 50 witnesses Tea Partiers and Republicans that US BANK NA never brought in the Note, Mortgage, and Assignment and no letter of indebtment and no proof that we were not making the payments and we pointed out to the Judge that they only have a Lis. Pendens on record with no Complaint to be seen and no Mortgage or Note Attached to a Complaint as Required by Fl. Statute (), when Judge ZABEL realized that therewas no Mortgage and no Note put in and that she did a final Judgement with no ORIGINAL NOTE or MORTGAGE DOCS at all which is a PERJURY  Felony and in Violation of Florida Stat. 702.015 (4)(5)(C). So the  JUDGE PANICKED and Ordered US Bank's Attorneys to bring in the Original Notes and Mortgage and Zabel Cancelled the Foreclosure Sale SCHEDULED FOR 9/12/2007 until they brought in the Original Note and Mortgage. But after the JUDGE (ZABEL) Cancelled the Foreclosure Sale set for 9/12/2007 somehow those tricky Lawyers got the Clerk to do the SALE anyway against Judge ZABEL's Order so we had to rush back to the Court to get an Emergency hearing to tell Judge ZABEL that the LAWYERS and the Clerk did the SALE anyway against her Order and the Judge was very upset and ordered the Attorneys For US BANK NA to do a Motion to Cancel the Sale and then the Judge signed an order to Cancel the Sale from their Motion to Cancel the Sale. And then Judge ZABEL Ordered and Demanded that they bring in the Original Note and Mortgage because now Judge ZABEL was nowin the position to get in Trouble for doing a Final Judgement without Certified Copies of the Note and Mortgage and without the Original Note and Mortgage that is  Required  by  Florida  Statute,

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

Florida Stat. 702.015 (4), in other words these Clowns were just Illegally going to take our property but got caught! Judge ZABEL Ordered the Atty's. to go get the Docs. That they said they had, then JudgeZABEL took a Court Recess and during the break from the Courtroom US Bank Lawyers Refused to go back into the Courtroom this upset the Judge but Judge ZABEL gave them time to bring in the Note and the Mortgage but they would not so therefore we put in a Motion to Dismiss with Prejudice we went back and Forth with the Judge and the Banks Attorneys but they would not follow the Judge SarahI. Zabel's Order to bring in Note and Order and therefore Judge ZABEL Dismissed the case with Prejudice, Exh. C - the tenth line . of the 2007 Called Case Number 2007 -12407-CA-01 of the Docket. And then Judge ZABEL said that it would show on the Docket in a few days which was 04/07/2007. of that same Docket!! NOW I'M REPORTING JUDGE SHURR TO THE ADMINISTRATIVE JUDGE BAILEY WHO APPOINTS JUDGES TO CASES, GOVERNOR DE SANTIS, THE JQC, THE BAR, THE US DOJ, THE FBI, THE FLORIDA STATE ATTONEY AND MEDIA FOR OBVIOUS RACIST MISCONDUCT, BY TOTALLY IGNORING FLORIDA STATUTES-RULES AND FOR CRAZY OBVIOUS CONFLICTS OF INTEREST Because something strange happened out of nowhere! Judge Valerie Manno Schurr's SIGNATURE and NAME shows up on the DISMISSAL WITH PREJUDICE from Judge ZABEL THE YEAR AFTER SHE BECOMES JUDGE RIGHT BEFORE SHE mistereouly takes over our case

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

to save U.S. BANK FROM US and save JUDGE ZABEL, THEIR LAWYERS FROM THE WRATH OF THEIR BOSS GMAC (US BANK) WHO HAD ALREADY PAID THEM TO SAVE U.S. BANK FROM US. JUDGE VALERIE

MANNO SHURR  is who we're just now finding out that THE BANKS PAID HER TO TRICK US INTO BELIEVING THAT WE WERE SAFE FROM US BANK WITH THE DISMISSAL WITH PREJUDICE AND THEN THREE MONTHS LATER JUDGE VALERIE MANNO SHURR CHANGES IT TO DISMISSAL WITHOUT PREJUDICE IN AN ILLEGAL EXPARTE HEARING WITHOUT US KNOWING SO THAT US BANK COULD AND START THE SAME CASE OVER WITHOUT NOTICE TO US! WHY DID GMAC (US BANK) PAY JUDGE VALARIE MANNO SHURR TO AKE OVER OUR CASE WAS BECAUSE JUDGE ZABEL DISMISSED WITH PREJUDICE US BANK'S CASE 04/07/2009 AS SEEN ON THE DOCKET CASE NUMBER 2007-12407- CA-01 LINE 10, Exh. C. And FORD MOTOR CO. V. CALLOWAY SAYS A JUDGE CAN'T CHANGE ANOTHER JUDGE'S ORDER SO, JUDGE VALARIE MANNO SHURR FILED HER DUPLICATE DISMISSAL WITH PREJUDICE. SAMPLE ZABEL'S ORDER FILED 04/07/2009 AND SHURR'S DUPLICATE ORDER FILED 04/07/2010 AS SEEN ON THE DOCKET CASE NUMBER 2007-12407-CA-01 LINE 10 AND 11, Exh. C. ALL DONE SO THAT SHE COULD IN AN ILLEGAL EXPARTE HEARING IN VIOLATION OF

FLORIDA STAT. 702.07 WITH THE PLAINTIFF US BANK CHANGE HER OWN ORDER TO DISMISSAL WITHOUT PREJUDICE, Exh. F. TO HELP GMAC (US BANK). STEAL SO THEY CAN ALL MAKE MONEY OFF OF HELPLESS BLACKS. USING BIG BAD JUDGES AND LAWYERS! The Proof

that JUDGE VALARIE MANNO SHURR made MONEY to help them is on her Form 6 FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTEREST

SWORN AFFIDAVIT OATH of 2008 that shows on Part C. Liabilities section that alShe has $995,000.00 and $91,498.00 from GMAC which is the Servicer and owner RESIDENTIAL FUNDING CORPORATION in their notice of transfer saidthey were controlling our payments as Servicer from at least 1/1/2007 on the Mortgage Payment Coupon at the bottom of the Transfer Letter, Exh.S. and

$129,000,00 from Wells Fargo which is US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3, Exh.(DD). And Judge Schurr has

$129,000,00 from Wells Fargo which is US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3, Exh. (DD) then in 2009 form 6 it shows GMAC MORTGAGE of $410,000.00 and Credit line with GMAC, and $128,000 Wachovia which is Wells Fargo which is US BANK, Exh.(EE) and then she allowsan Illegal Ex parte Hearing with US Bank National Attorneys to change her order which is really Judge Zábel's Order from DISMISSED WITH PREJUDICE in April 6th , 2010 Exh. (F3) to change the Dismissed with Prejudice 3 months later

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

in June 27th 2010 into DISMISSED WITHOUT PREJUDICE In this Ex Parte hearing Exh.(F). which is only supposed to be done with only the Defendants that are about to lose their home to the Foreclosure Sale and this must be done before the sale of the House according to Fl. Statute 107.07, (during the interim GMAC also had a Florida Default Letter as the Servicer) and after that wonderful gift Judgement to US Bank National Association and helping Judge Zabel out of the mess for doing a Judgment without a Docketed Complaint, Note, Allonge, Mortgage or an Assignment from the Records which was literally Criminal, Thievery of our house. Then suddenly In her 2010 Form 6 Disclosure of Financial Interest , Exh.(FF), it shows a $400,000.00 gift from GMAC and shows

$1,000,000.00 from Wells Fargo which is US Bank, Exh. (EEE). All of this is pay to Play RICO Conspiracy to Steal Black Peoples Houses which they're also doing to White European Gentiles! US BANKS only lawful Remedy was to Appeal the Dismissal with Prejudice within 30 days according to Florida Appelate Rule 4 (a)(1)(A). But now a case that was Dismissed with Prejudice was given life again by Judge Valerie Manno Schurr's a judge we had never met never seen or ever hada hearing in front of came in and dismissed the case with Prejudice exactly one year after Judge Zabel Dismissed it with Prejudice to avoid Calloway Vs. Ford which says another Judge cannot change another Judges Order from the same Circuit Court they must appeal to a higher Court but Judge Valerie manno Schurr

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

did it anyway by having a hearing three months later in an illegal Ex parte hearing and changing the Dismissal with Prejudice to Dismissal without Prejudice which allowed US BANK to secretly file another Foreclosure Case against the House at 15020 South River Drive Miami Florida 33167 and US Bank did file another case which was a continuance of the same Case from 2007 which is called Case Number 2007-12407-CA01 that was Dismissed with Prejudice and Secretly changed to Dismissed without Prejudice and without any notice to us in 2010 called Case number 2010-61928-CA01 this 2010 was also done without the Original Mortgage, Assignment and Docs. Original of the Note, Allonge to the Note, and the second Allonge from Fannie Mae or indemnification info that indemnifies Fannie Mae and there must be the Loan Number, Date and the printed name of the Signer as required by Federal Fannie Mae Rules B8-3-04 for Fannie Mae of which none of this is on the copy of the Allonge recorded on the Docket, Exh. LL. And JUDGE VALERIE MANNO SHURR has taken my new Case again to finish what she started by Ruling in favor of US BANK and GMAC with worst Conflicts of Interests that she's trying to hide so that she can Rule in the Bank's Favor to illegally. Because in her FORM 6 - 2019 and 2020 Financial Disclosure Affidavit she has over 11,192,000.00 million, plus on line 5 she states that she hasa $400,000.00 Mortgage with City National Bank that is Royal Bank of Canada which is Wells Fargo, Exh. SS. and Wells Fargo is US Bank the Bank Judge

Valerie Manno Shurr is helping to illegally Foreclose on us, Exh. TT. The other conflict is Shurr's $400,000.00 Mortgage Holder City National Bank that is Royal Bank of Canada Which is Morgan Stanly/ JP MORGAN, Exh. VVV, which is US BANCORP/ US BANK, Exh. W. and Exh. X. all this is CITY NATIONAL BANK Exh. SS, Who Merged with Wachovia Bank who admitted the were SLAVE MASTERS OF BLACK PEOPLE, Exh.UU. to just take CRIPLE HELPLESS

BLACK PEOPLE'S HOMES. I will investigat how this Judge accumulated 11 million dollars on a JUDGE'S SALLARY , I Demand to see where all that money This is the BANK that was served my law suite by an official Servicer acknowledge by US BANK which by Florida Statute they hod only 20 days to answer but they never answered for six months while we trying to Default them the whole time, yet JUDGE VALERIE MANNO SHURR with her millions of dollars Conflicts of interest helped US Bank by not ever Defaulting them no matter what the laws and rules  say I Really don't stand a chance in this  fight because the referee (JUDGE SHURR) is being paid by my Opponents to Rule only in their (USBANK'S-GOLIATH'S) favor I AM Detroyed and CRUCIFIED by these Wicked Animals who break all the Laws and kill BLACK PEOPLE and hold themselves not  GUILTY  by  these  CROOKED  EVIL  JUDGES like  JUDGE  VALERIE MANNO SHURR and I know they are Plotting to KILL me right now, K.J.V. BIBLE= ZECHARIAH.

## JURISDICTION AND VENUE

The transactions and events which are the subject matter of this

Complaint all occurred with in the County of Dade, Florida.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

9).   The Property is located within the County of Dade

State of Florida with an address of 15020 south river drive

Miami Florida 33167.

7. Original federal subject matter jurisdiction to adjudicate this Inverse Condemnation suit is found under 28 U.S.C. §1331(a), which confers jurisdiction to hear cases alleging the violation of rights under the the U.S. Constitution. Plaintiffs seek relief under 28 U.S.C. § 2201-2202, the Declaratory Judgment Act; 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the Civil Rights Act, under the U.S. Constitution, Amend. V, and U.S. Constitution Amend. XIV, and see also Fed. Rule of Civ. Pro. Rule 23.

8. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs claim occurred in this district.

## III.                                                PARTIES

### PARTIES AND JURISDICTION

Plaintiff Mack Wells whoose Adress is  300 NE 29street Pompano Beach Fl. 33064

Maurice Symonette whose address is 300 NE 29street Pompano Beach Fl. 33064 is now and at all times relevant to this action and a resident of  Broward County y and a holder of title to this said property. Whose address is 15020 S. River Dr. Miami Fl. 33167 is now, at and at all times relevant to this action, a resident of the County of BOWARD and DADE, State of Florida. And a holder of the Title to this purportedly said property.

The U.S. TREASURY/IRS whose address is 1500 Pennsylvania Ave., N.W.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

that Axiom Financial SERVICES is the Originator of the loan Filing # 142386698

E-Filed 01/21/2022 09:30:09 AM

Defendant, RESIDENTIAL FUNDING CO. LLC, (herein after known as RFC.

The U.S. TREASURY/IRS whose address is 1500 Pennsylvania Ave., N.W. Washington, D.C. 20220. The UNITED STATES Treasury may have interest in this because the note was sold in RIMIC which by law had to destroy the Note to turn it into a Bond or a stock because the Note cannot exist at the same time as the Bond, because that would be called double-dipping and because the Note was destroyed

The U.S. Internal Revenue (U.S. Treasury) gave a Tax Wright off from the U.S. Treasury as a loss which gives The U.S. Treasury interest in the property if found to be Fraudulent, so therefore the title must be Quieted concerning The U.S. Treasury.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

MERS is doing business in the County of DADE, State of Florida Plaintiff is further informed and believe, and there on allege, that Defendant MERS is the purported Beneficiary under the Deed or Trust and/or is a purported participant in the

Quite Title is the reason that I am suing the SEC who in REMIC Facilitated the sale of the BOND on the Market which made it possible for the US dept. of Treasury/IRS in this Complaint. SECURITY AND EXCHANGE COMMISSION whose address is 801 Brickell AVE. #1800 Miami Fl. 33131.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RSC 2005 AAHL3 whoose address is in China under the CIC (FARA) whose Address is 800 Nicollet Mall in Minneapolis, Minnesota, doing business in the County of DADE, State of FLORIDA and is the purported TRUSTEE for Securitized Trust and/or a purported participant in the imperfect securitization of Note and or the Deed of Trust as more particularly described in this Complaint 5.

HARVEY RUVIN Dade County Clerk of Courts Located at 73 W. Flagler Street Miami, Florida 33130. Dade County Records Department Located at Courthouse East 22 NW 1st Street, 2nd Floor.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

LLC"), Plaintiff is informed and believe, and thereon allege that, Defendant is doing business in the County of DADE, State of FLORIDA and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

Defendant, AXIOM BANK. Plaintiff is informed and believe, and thereon allege that, Defendant is a Corporation, doing business in the County of DADE, State of FLORIDA and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more Particularly described in this Complaint.

6. Mortgage Electronic Registration Systems, INC., aka MERS ("MERS"), Plaintiff is informed and believe, and thereon allege, that MERS is a corporation duly organized and existing under the laws of DADE, whose last known address is 1818

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

described in this Quiet Title Complaint. Commissioner.

Rene Garcia Plaintiff is informed and believe, and thereon allege, that Commissioner Rene Garcia is a Commissioner doing business at 10260 SW 56th St. Miami, Fl. 33165.Appellate Judges Brownwyn C. Miller, Judge Kevin Michael Emas, Judge Edwin Scales. Bailey Plaintiff is informed and believe, and thereon allege, that all these Judges are doing business at the Third District Court of Appeal 2001 SW 117th Ave Miami, Fl. 33175

Circuit Court Judges, Judge Valerie Manno Shurr, Judge John Schlesinger, Judge Miguel De La , Judge Veronica Diaz, Judge Samantha Cohen, Judge Vivianne Del Rio, Judge Carlos Lopez, Administrative Judge Jennifer Bailey Plaintiff is informed and believe, and thereon allege, that all these Judges are doing business at 73 West Flagler St. Court House Miami, Fl.33130

MERS is doing business in the County of DADE, State of Florida Plaintiff is further informed and believe, and there on allege, that Defendant MERS is the purported Beneficiary under the Deed or Trust and/or is a purported participant in the

9. Plaintiffs MRS. OLSON'S COFFEE HUT, a proprietorship DBA WILLIAM OLSON and MATT OLSON and MATT OLSON, a coffee shop.

THE ORIGINAL PIZZA COOKERY, a pizzeria AND JORDAN DANIEL KLEMPER an owner.

10. Defendants, COUNTY OF VENTURA and ROBERT LEVIN, M.D., in his capacity as Health Officer for Ventura County named in his official capacity, who is responsible for maintain health conditions in public places. .

## IV.                                    FACTS

We filed a Federal Notice of Removal July 14th 2023 in Ft. Lauderdale under case# 23-cv-61345 Filed and labeled Maurice Symonette and Mack Wells Notice of Removal Exh.1A and 1B with the receipt saying that this Case is in the Wrong

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

'1441 says only Defendants can Remove a State Court Case to Federal Court so when we filed in the wrong venue by mistake and they sent our case to Dade county where the Case Originated which was the right Division under Case# 23-cv-22640-JEM wherein Judge Martinez asked us to prove why we had Jurisdiction, filed on the Docket August 3rd, 2023. August 7th, 2023 we filed our Jurisdictional Memorandum, on 11/08/23 Defendant U.S. Bank began to respond to our Notice of Removal and Complaint and until this day we have been in Federal Removal and they have not answered but during the interim Judge Carlos Lopez tried to sell the house while we had a Notice of Removal and then he stopped the Sale of the House after we Pointed out to him the Notice of Removal and then we noticed that US BANK was continuing the Foreclosure because they snuck a Fake Forged Remand Order by us that had the a signature that's obviously not Judge Jose E. Martinez's signature see Exh. 5. As compared to his signature on our new Case# 23-cv-22640-JEM wherein Judge Martinez asked us to prove Federal Jurisdiction so therefore we demand to see the Original filings with the Original Signatures on Case#23-cv-22640 and Case#23-cv-22848, because we believe that some other filings are Forged and not Original. see Judge Martineze's signature, Exh. 6. And three other cases of Judge Martinez's signature. Martin V. Ogwyn, Exh. 7., Smith Jr. v City of Miami, Exh. 8-1 and 8-2 and the United States of America V. Davis, Exh. 9-1. All of these Signatures are the same showing the incursive J going slightly towards the left with a half a circle J with an Apostrophe at the top at the end of Jose' the middle initial E is leaning towards the right with the end of the E at the bottom going up with a period the line on the M slants towards the right and then back towards the left with a hook at the end with the A, R, T and with a incursive Z, the J is a circular pyramid very wide pointing towards the left, the middle initial E doesn't look at all like the Middle initial E on the other true signatures, Exh .6. and it has no period and the (mart) has the A with no R like the original, Exh. 6. with the rest of the alphabets leaning towards the right. And the alphabet T does not have a straight line slanted down like the rest of the Ts on his correct signatures, the fake T has a hook on the left the original does not have the hook and does not have the incursive E or the long Z at the end of his name so therefore this is not Judge Martinez's signature and a fake Order. like Judge Valerie Manno Schurr said in her hearing with us that she did not sign that Order and whispered to the Attorneys asking in a whisper "Why did you sign those Orders for, me I did not tell you to sign that Order" and I asked her what did you say and she said "hello" "OH, nothing" she said *HELLO* because she didn't realize that we could hear her mistakenly unmuted MIC, see: Gods2.com video #1.  This shows their Collusion. Then I told her about the ORDER she so called signed and she said I did not sign those that was (Judge) Veronica Diaz, Gods2.com, and then I showed her the Orders with her Forged signature, Exh. 10 and 11. and she was shocked and I showed her her own FORM 6 Affidavit for the State of Florida that showed that she had a terrible Conflict of interest because of the fact that she made 995,000 + 440,000 and over time she made 11, Million from GMAC, Exh. 12. the Servicer for U.S. Bank, Exh. 13. and the next day she Recused herself, Exh. 15. and *REVERTED* the Case back to being Dismissed with Prejudice, Exh. 17. And according to Florida Rule

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

sign the Dismissal with Prejudice dated 04/06/09, Exh. 14. 1-2-3 put on the Docket 04/07/09, Exh. 18. and she signed our copy as a receipt for us, Exh.17. And so we know that the US BANK Lawyers Forged Judge Valerie Manno Schurr's Order, Exh. 20. And I know that Judge Jose E. Martinez signature be on that Remand Order dated 08/23/2023 when he knew I filed a corrected Amended Notice of Removal and Complaint under the Case# 23-cv-22640-JEM dated 07/14/23 that came from the confusion of us filing the Notice of Removal in the wrong Division Ft. Lauderdale that they transferred to Dade Cunty Federal Division the same Day wherein Judge Martinez asked us to show why the Federal Courts had Jurisdiction to Remove this Case to Federal Court as seen in case# 23-cv-22640-JEM Dated 08/03/23 we showed our Jurisdiction 08/07/23 Exh.17pg.1 and we filed our Amended Complaint listed 08/01/23 which also had the Amended Notice of Removal written June 29th, as seen bove the signatures of the Document attached to the Amended Complaint which was the way I did my Case#23-cv-22640 Exh.17pg2 but Fraudulently did not show on the Federal Docket Dated, 08/02/23, because of the Powerful Federal Jurisdictions in it, but said and mentioned because we did File it, 08/07/23 Docket, taken out of the Docket and used by U.S. BANK LAWYERS FRAUDULENTLY to do a FED. NOTICE OF REMOVAL Filed by U.S. BANK N.A. in Violation of 28 USC 1446 (b)(1) which only allows Defendants to File. Which U.S. BANK as the Plaintiff cannot do a Notice of Removal because they choose the County Venue and they used SYMONETTE and WELL's signature to File for U.S. BANK N.A. as seen on the 23-CV-22848-JEM FAKE CASE number one on that Docket. The Law says a person can't sign for a Corporation, Walacoerage v. Excell. but U.S. BANK LAWYERS USD our signatures to file for U.S. BANK N.A. Evan though SYMONETTE nor WELL's filed or opened that 23-CV-22848-JEM Fraudulent Case 07/31/23 U.S. BANK did this by taking the Document filing dated July 31st of the NOTICE of Filing our Notice of Removal, Exh. 20.

They took this and started a whole new Case without our Permission. And that's why we had to file our notice of compliance for the Notice of Removal and Complaint 10/12/23, and then we had to file our Notice of Removal in County Court Case# 1010-61928-CAO1, 10/13/23, 10/14/23 and 10/15/23 and the Clerks tried to keep our filings off the Docket even though we E Filed the Notice of Removal but it would not show on the **DADE DOCKET** several times, Exh. 19. and we gave it to the Clerk at the Clerk's Counter on Camera and gave it to Judge Carlos Lopez direct as admitted by the HEAD CLERK after we showed her the video proof then they put the Notice of Removal Filings on the DADE DOCKT Case # 2010-61928-CA01 Dated and seen on Docket Oct. 13th ,14th, and 15th, before the Oct. 16th Sales Date but they allowed the Sale to go anyway in Violation Federal Stay Law 28 U.S. CODE SS 1446 (d) on video gods2.com 1G-18. and 19. in the County Case# 1010-61928-CAO1 and they did the Sale anyway in Violation of 28 US CODE SS 1446(d). US BANK knew.. 131 Judges have been Caught with Conflicts of Interest Exh.21-22. And hundreds of lawyers havbeen found guilty fo Forging Judges Signatures on orders to Rule in their Favor Exh.23,24 and 25

were in the NOTICE OF REMOVAL Court because US BANK did a Notice of Appearance to our Notice of Removal as seen on the Federal Docket Case #23-CV-22640-JEM Dated 08/07/2023, 10/12/2023 and 11/08/2023 that's LINES 8, 9 and 10. And as seen in the County Case# 1010-61928-CAO1 and as seen on Docket Oct. 13th, 14th, and 15th, before the 0ct. 16th Sales Date. We objected to the Sale and Judge Carlos Lopez immediately stopped being the Judge and Judge Spencer Eig became the Judge and we pointed out to him that this case has already been Removed to Federal Court and its still in Federal Court and Judge Eig Went against 28 U.S. Code SS 1446 (d) and went against the 3rd DCA Appellate Court Garcia V. Deutsche Bank Nat'l Trust Co., of the which says once a Notice of Removal is Filed all State actions stops which is totally binding on Judge Spencer Eig of the 11th Judicial Circuit Court from the Federal Courts and the 3rd DCA Appellate Court

# NOW TO SHOW THE FORGERY AND FRAUD TO ILLEGALLY STEAL VETERANS AND CRIPPLE BLACK PEOPLE'S PROPERTY

We filed a Notice of Removal July 17th in Ft. Lauderdale Case# 23-cv-61345 Exh. 1. With the receipt on the comments line with the Case# 23-cv-61345 Wells Et Al V. U.S Bank National Association Et al wherein we paid the $402 cash as required and *very important to notice* that the Case# on the receipt on Case# 23-cv-61345 has the Case# of the transferred Case# 23-cv-22640 because the case was transferred to the Miami Division but the point is the Document# is written at the very top of all the of all the Documents on a Federal Docket but this receipt on all Federal Dockets! Exh. 4 but for this strange Case that now mysteriously shows up Docket text filed 07/14/23 it says Clerks Notice to filer reference Case administratively closed. Wrong venue selected by filing Case has been renumbered to the new Case# 23-cv-22640 no further entries will be made on this case entered 07/14/23 Exh. 3. A, B, and C. but it was the wrong Division and was transferred the same day to the Correct Division in Dade-County Federal Court with the case# 23-cv-61345

I want you to take notice that the remand for July 31st has a forged signature from the wrong case# that never existed because they immediately put it in the Miami-Dade Federal Court which was the correct division and not only was the signature on the remand forged but the signature for the clerk on the certified stamp was forged too. The whole case for Case# 23-CV-22848 that these Lawyers from U.S. Bank Filed is totally Fraudulent, the Case# that was actually filed and paid for by us was Case# 23-CV-61345 and that Case was immediately moved to Miami under Case #23-CV-22640 the other Case# 23-cv-22848 that was Supposedly Remanded has file date of July 31st but only case we filed was on July 14. Also the Order of Remand that

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

July 31st did not have my signature on it and it had the wrong Case#23-cv-22848 on it my Case# is 23-cv-22640 and the Case#23-cv-22848 on that one is from U.S. Bank filing a fake receipt when I filed it it had the correct case# on it but the Clerk and the Lawyers changed it just like they did Valerie Manno Schurr. It has the same Fonts for Aug 11 2008 labels For Sara Zabel's Dismissal with Prejudice. And Valerie       Manno Schurr said she did not sign it and according to Fl. Stat.695.26(a)

It says a printed name must be under the Signature according to Fannie Mae rule B8-3-04 and their literally using our same fonts so that the Notice of Removal is literally not the one that we filed in Federal Court ours ended in 640 theirs ended in 848 and then they Remanded it by signing the Signature.

So that they Could continue the fake Foreclosure that they were doing unbeknownst to us because we were working on the Federal Case#23-cv-22640 but when we caught on was when we found out they still had a Sale for the house so we had to go get our notice of removal papers. . This State Court is precluded by federal law, based on the application of the automatic stay Federal code 28 U.S. SS 1446 (D), from allowing the sale to proceed forward in this instance. This Court has no discretion in this matter when it comes to the removal statute and its effect on the jurisdiction of this Court.

The Third District, whose decisions are utterly binding on this Court stated, in *Garcia v. Deutsche Bank Nat'l Trust Co.*, 259 So. 3d 201, 202 (Fla. 3DCA 2018), that "State court jurisdiction ceases upon removal of a case to federal court and ***any pre-remand proceedings occurring in the state court after the case has been removed are void***" (citing *Musa v. Wells Fargo Del. Tr. Co.*, 181 So. 3d 1275, 1277 (Fla. 1st DCA 2015)) [emphasis added]. But it does not end there. Even more telling as to the effect of a

on a court's jurisdiction is what the Third District stated following that which was

"[i]n a detailed review of the law in this area, the First District concluded that even an

***improper removal to federal court, or a removal for improper motives, will not***

***preserve state court jurisdiction.***" *Id.* at 1280-84; see also *Cole v. Wells Fargo Bank Nat'l Ass'n,* 201 So. 3d 749, 750 (Fla. 5th DCA 2016).

Even the Federal Eleventh Circuit Court of Appeals took this position in the seminal case *Maseda v. Honda Motor Co.,* 861 F. 2d 1248 (11th Cir. 1988)("Since *Steamship Co. v. Tugman,* 106 U.S. 118, 1S. Ct. 58, 27 L. Ed. 87 (1882) was

decided, the removal statute 28 U.S.C. § 1446 was amended. Under the amendment, the filing of a removal petition

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

*Jacobs*, 243 F.2d 432, 433 (5th Cir.))[emphasis added].

More damaging to this matter is the fact that this Court has proceeding in this matter while this Court lacked subject matter jurisdiction upon the filing of the Notice on Oct. 13, 2023. There is even an argument that the Court did not have jurisdiction under the second filed removal under case 23-CV-22640-JEM since the filing of that case. A careful examination of that case's docket in the federal court clearly shows that the matter has not been dismissed or otherwise remanded. The docket clearly reflects that entry #4 shows the notice of removal filed in this Court is the same one filed in that court's records. The notice of removal, which should have been filed in this action, was mistakenly filed in that court instead. Under the removal statute, the removal is not effective until filed in the state court action. Granted, the notice was not filed here when the action was filed in federal court. But the federal law is clear, "[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, *which shall effect the removal and the State court shall proceed no further unless and until the case is remanded*." 28 U.S.C. §1446(d). In this case, the filing of the notice of removal on Oct. 13, 2023 instituted the automatic stay, based on removal, under case number 23-CV-22640-JEM in federal court.

WE CERTIFY THAT THIS IS A TRUE EMERGENCY BECAUSE THEY HAD THE SALE WHILE WE WERE IN THE FEDERAL NOTICE OF REMOVAL AND NOW THEY HAVE A MOTION FOR WRIT OF POSSESSION ON THE 11TH OF JUNE WHICH WILL MAKE US LOSE OUR PROPERTY ARE ASKING THE SHERIFF TO COME AND EVICT BY MAY 31ST,2024. WHICH IS 10 DAYS FROM THE NOTICE THE NOTICE THEY FILED

## ARGUMENT FOR THE REMEDY OF INJUNCTION

### INJUNCTION REQUESTED

Plaintiffs seeks a Permanent Injunction prohibiting Defendants from Illegally Foreclosing on us .Other helpless people as U.S Bank N.A.

## 2. LEGAL STANDARD FOR INJUNCTION

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

of legal remedies. See *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Generally, the party requesting injunctive relief must establish the likelihood of irreparable harm if the injunction is not entered and that other remedies at law are inadequate.Such as the loss of Property threw illegal Foreclosures and Evictions without ever showing the owner ship of the Allonge , the Mortgage and the Note There is a balancing test that courts typically employ in determining whether to issue an injunction. To seek a permanent injunction, the plaintiffs must pass the four-step test: (1) that the plaintiffs have suffered an irreparable injury; by losing their property permanently according to Fl. Bill 87 which states once you lose possession of the property you can no longer get the property yon can only get money which is disastrous because the home is our life with over 20years of memory and preparation in our request to help all good people Latin, Black, and White  (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury because their home has its memories that can never  be recovered by money because of bill 87 in florida; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiffs and defendant;

and (4) that the permanent injunction being sought would not hurt public interest. See, e.g., *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

### 3. <u>PLAINTIFF SUFFERED IRREPARABLE INJURY</u>

Here, Plaintiffs have suffered irreparable injury under the Fifth Amendment. Plaintiffs did nothing wrong, yet is faced with a taking comprising the total loss of the Home, valued at $2.9 million Dollars. Moreover, Plaintiffs suffered an injury to liberty, as the fake Foreclosure Dismissed without prejudice  Order have and will deprive Plaintiff of the right to quiet enjoyment of their Property   especially after never missing a payment and  we're never Dead Beat Home Owners".26 Deprivation of fundamental liberty interests, no matter how brief, are considered to

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

courts hold that *no further showing of irreparable injury is necessary*." See, e.g., *Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 (6th Cir. 2002)* at 578 (a plaintiffs can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of plaintiffs constitutional rights); *ACLU of KY v. McCreary County, Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003) (if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm) (citations omitted); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3rd Cir. 1997) (denial of preliminary injunctive relief was irreparable harm to plaintiffs' voting and associational rights); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (holding that plaintiffs may establish irreparable harm based on an alleged violation of their Fourth Amendment rights); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding that a violation of privacy constitutes an irreparable harm); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (holding allegation of violation of Eighth Amendment rights sufficient showing of irreparable harm); *Doe v. Mundy*, 514 F.2d 1179 (7th Cir 1975) (denial of constitutional privacy right was irreparable harm); *Beerheide v. Zavaras*, 997 F.Supp. 1405 (D.C. Colo. 1998) (irreparable harm satisfied by allegation of deprivation of ree exercise of religion).

## 4. **PLAINTIFF HAS INADEQUATE REMEDY AT LAW**

To the best of Plaintiffs knowledge, statutory remedy exists for this injury. While Plaintiffs seeks just compensation, the requested Injunction is also necessary, for two independent reasons. First, as discussed above, the constitutional injury is irreparable and not adequately addressed by money damages. Second, an injunction prohibiting further enforcement of an unconstitutional law will prevent further injury to Plaintiffs, and will prevent future injuries to others. See "Public Interest", *infra.*

## Balance of Hardships Strongly Favors Plaintiff

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

Thus, Defendant suffers no hardship from the issuance of the requested injunction. On the other hand, Plaintiffs has suffered extreme hardship – the loss of profits and inability to operate to quiet enjoyment of this property as seeing gods2.com video H. and will continue to suffer catastrophic losses unless and until the requested Injunction is issued.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs prays for relief as follows: Permanent Injunction prohibiting Defendant and future fake Foreclosure Orders that deprives an otherwise law-abiding citizens of ownership and the right to own property under the Black Code Law and Jim Crow Law that their trying to impose on us saying Black People cannot own Propertyproductive manner by utilizing any Tangible Property at any Physical Location legally controlled by the owners, and only after an appellate review of any classification determining the law Remedy Sanctions and Costs of the suit and attorney fees as allowed by statute; and Anyother such relief as the Court may deem proper.

Respectfully submitted on January 13, 2021

/S/MAURICE SYMONETTE

MACK WELLS

MAURICE SYMONETTE

MACK WELLS

15020 S.RIVER DR.

15020 S. RIVER DR.

MIAMI FL. 33167

MIAMI FL. 33167

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for
RASC 2005AHL3,

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

       Plaintiff,

vs.

Leroy Williams; The Unknown Spouse of Leroy
Williams; Littlejohn a/k/a James L. Jolin, James;
Unknown Spouse of James Littlejohn AKA James L.
Jolin; Hoke Williams; Unknown Spouse of Hoke
Williams; Mack Wells; Unknown Spouse of Mack
Wells; Curtis McNeil; The Unknown Spouse of
Curtis McNeil; Symonette Limited Partnership;
Deutsche Bank National Trust Company, as Trustee
for Franklin Credit Trust Series I; Miami-Dade
County, Florida; State of Florida, Department of
Revenue; Unifund CCR, Partners, G.P.; Suntrust
Bank; City of North Miami (City),

       Defendants.

_____/

## PLAINTIFF'S TRIAL MEMORANDUM

Plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005AHL3, by and through the undersigned counsel, hereby files its Trial Memorandum, pursuant to this Court's Trial Order dated November 29, 2017 and further states as follows:

**Whether Plaintiff's Prior Foreclosure Case No. 2007-12407-CA-01 was Dismissed with Prejudice, And Whether there contained an Order Precluding Plaintiff from re-filing a Foreclosure Action on the subject Note and Mortgage.**

1. Plaintiff's filed this current Foreclosure action on December 06, 2010 on the subject Note and Mortgage.

2. On said action, all Defendants were properly served.

3. At the Trial that occurred on November 29, 2017, Defendants, brought forth an allegation that the Court on a prior foreclosure action, case No. 2007-12407-CA-01, entered an Order Dismissing the Foreclosure Action with Prejudice and precluding Plaintiff from filing any other action on the subject Note and Mortgage.

4. Defendants allegation is without merit. Defendants are correct, in that there was a previous foreclosure action filed on April 26, 2007, case No. 2007-12407-CA-01. However, Defendants are incorrect in their allegations that an Order was entered precluding Plaintiff from instituting further Foreclosure action on the subject Note and Mortgage.

5. In respect to Case No. 2007-12407-CA-01, on August 9, 2007, this Court entered Final Judgment in Plaintiff's favor. The sale of the property was scheduled to occur on September 14, 2007. Attached hereto as Exhibit "A" the Final Judgment.

6. The Original Note and Mortgage was filed on August 13, 2007.

7. Subsequent to the entry of the Final Judgment of Foreclosure, a Motion was filed on September 12, 2007, to Cancel the Foreclosure sale that was scheduled for September 17, 2007. An Order was entered on September 17, 2007, canceling the Foreclosure Sale. Attached hereto as Exhibit "B", Order Canceling Sale.

8. After the cancelation of the Foreclosure Sale, Defendant, Mack Wells on August 15, 2008 filed a Motion to Dismiss the action due to Lack of Prosecution. The Court Docket reflects that on September 9, 2008, a Notice was filed by Plaintiff responding to Defendant, Mack Wells Motion to Dismiss for Lack of Prosecution.

9. Nevertheless, on April 07, 2010, this Court entered an Order Dismissing Case No. 2007-12407-CA-01, With Prejudice for Lack of Prosecution. Attached hereto as Exhibit "C", Order Dismissing Case for Lack of Prosecution.

10. The Dismissal that was entered on April 07, 2010, on Case No. 2007-12407-CA-01 was only due to Lack of Prosecution.

11. On June 20, 2010, Plaintiff's counsel the time, filed a Motion to Dismiss the Case, Cancel Foreclosure Sale, Cancel Notice of Lis Pendens, And Setting Aside Final Summary Judgment. On June 25, 2010, this Court entered an Order Granting the Dismissal of the Case. The Order further states that Plaintiff's Action was dismissed Without Prejudice and that Plaintiff retain future rights to bring an action to foreclose the mortgage, which is the subject of the instant action. Attached hereto as Exhibit "D", Order of Dismissal Dated June 25, 2010.

12. On October 14, 2010, a Motion was filed to Vacate the Last Order of Dismissal, entered on June 25, 2010 and retained the initial Dismissal Order entered on April 07, 2010. On

determining standing, as financial institutions are not known to incur expenses on behalf of properties for which they do not hold an interest.")

Further, reasonings, Defendants, request for directed verdict should be denied and Plaintiff's request for entry of Final Judgment in Plaintiff's favor should be granted.

## CONCLUSION:

Plaintiff is entitled to entry of final judgment of foreclosure because it has demonstrated that there was no prior dismissal that barred Plaintiff from filing and proceeding with the subject foreclosure action. Further, Plaintiff has demonstrated its standing as the Holder of the Note, and even as a Non-Holder with the rights to enforce the Note. Plaintiff's position is supported by the evidence that was admitted into evidence at Trial, including the Original Note, Original Mortgage, MLS, Pooling and Servicing, Breach Letter, Payment History, and Judgment Figures, and the corroborated competent testimony of the witness given at trial.

I HEREBY CERTIFY that a true and correct copy hereof was served electronically or via U.S. Mail on ___December 13___, 2017, to all persons shown on the following service list.

Respectfully submitted,

BROCK & SCOTT, PLLC
Attorney for Plaintiff
1501 N.W. 49th Street, Suite 200
Ft. Lauderdale, FL 33309
Phone: (954) 618-6955, ext. 6151
Fax: (954) 618-6954
FL.CourtDocs@brockandscott.com

By_____
Willnae LaCroix, Esq.
Florida Bar No. 54672

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 21-10826-CA-25

MAURICE SYMONETTE,

Plaintiff,

vs.

US BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS), AXIOM FINANCIAL SERVICES, RESIDENTIAL FUNDING CORPORATION, RESIDENTIAL FUNDING CO. LLC, AND FRANKLIN MANAGEMENT CORPORATION

Defendant(s).

------------------------------------------------

July 22, 2022
2:33 p.m.

Plaintiff's hearing to Stop Sale and Eviction, held via Zoom, taken by DAVID GORDON, a Notary Public on behalf of the State of New York.

BEFORE:

Honorable Jose Rodriguez

MGR REPORTING, INC., 1-844-MGR-RPTG

APPEARANCES

MAURICE SYMONETTE, Plaintiff

MIKE ESPOSITO, US Bank

DAVID GORDON, Court Reporter

7-22-2022 - Maurice Symonette v. US Bank for Judge Del Rio to be dismissed. I believe I sited that correctly.

MR. SYMONETTE: Yes, sir, you sited it correctly, sir.

THE COURT: I need to know what your arguments are, because I'm not so sure I understand what it is that you want.

MR. SYMONETTE: Yes, sir. Judge Valeria Manno Schurr, when I showed her that she made $995,000 plus a $2.4 million dollars mortgage from U.S. Bank or GMAC, and firstly, she didn't sign no order of dismissal without prejudice, because you know, you're saying the same which is, another judge can't change another judges order in the same circuit court, but judge Valerie Manno Schurr inserted herself into the case after Judge Debelle (phonetic) dismissed the case with prejudice, and it was over.

And then a year later, she inserted herself into the case without being our Judge; us ever meeting her, and Judge Bailey said she didn't assign her to the

*Exh. 3 Pg. 1*

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867



Dec. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Nov.30, 2006 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:45 A.M. Nov. 30,2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 'service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD.SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail. payment.
Retain this letter for your records.



AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Jan. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WA |
| Bank Account Number: | *** |
| Date of Transaction: | Dec. |
| | |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| | |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:40 A.M. Dec. 31,2006,we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 'service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD.SUITE 350
AUSTIN TX 78759-5867

Important Information
Don"t give out your bank account information over the phone unless you know the company and understand why the information is nessary
This is not a bill. Do not mail. payment.
Retain this letter for your records.

Exh3pg3



AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Feb. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| **Bank:** | WACHOVIA BANK, NA |
| **Bank Account Number:** | ******0274 |
| **Date of Transaction:** | Jan.31, 2007 |
| **Payable To:** | AXIOM FINANCIAL SERVICES |
| **Amount of Payment:** | $2286.67 |
| **Customer Reference:** | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31,2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD.SUITE 350
AUSTIN TX 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail payment.
Retain this letter for your records.

*Exh. 3 Pg. 4*

**AXIOM FINANCIAL SERVICES**
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

**WESTERN UNION**
**PAYMENT SERVICES**

Feb. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| **Bank:** | WACHOVIA BANK, NA |
| **Bank Account Number:** | ******0274 |
| **Date of Transaction:** | Jan.31, 2007 |
| **Payable To:** | AXIOM FINANCIAL SERVICES |
| **Amount of Payment:** | $2286.67 |
| **Customer Reference:** | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31,2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD.SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail. payment.
Retain this letter for your records.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867



Mar. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

## PAYMENT DESCRIPTION

| | |
|---|---|
| **Bank:** | **WACHOVIA BANK, NA** |
| **Bank Account Number:** | ******0274 |
| **Date of Transaction:** | Feb. 28, 2007 |
| **Payable To:** | AXIOM FINANCIAL SERVICES |
| **Amount of Payment:** | $2286.67 |
| **Customer Reference:** | 0001920274 |

Dear LEROY WILLIAMS,

Based on your authorization during our telephone conversation on ............... we have initiated an automated clearing house (ACH) debit to withdraw the amount listed above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188 832 7990
Thank you for your business

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759 5867

Important to ............
Don't give out your bank account information over the phone unless ...................................
This is not a bill. Do not mail payment.
Retain this copy for your records

Exh.3 Pg-6

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

**WESTERN UNION**
**PAYMENT SERVICES**

April 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

Bank:                           WACHOVIA BANK, NA
Bank Account Number:            ******0274
Date of Transaction:            March 30, 2007

Payable To:                     Axion Financial Services
Amount of Payment:              $2286.67

Customer Reference:             0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 11:51 A.M., March 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd.Suite 350
Austin Tx 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

Exh J Pg 7

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867


**WESTERN UNION**
**PAYMENT SERVICES**

May 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMi FL 33167

**PAYMENT DESCRIPTION**

**Bank:**                          WACHOVIA BANK, NA
**Bank Account Number:**           ******0274
**Date of Transaction:**           April 30, 2007

**Payable To:**                    Axion Financial Services
**Amount of Payment:**             $2286.67

**Customer Reference:**            0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:00 A.M., April 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd.Suite 350
Austin Tx 78759-5867

Important Information
Don"t give out your bank account information over the phone unless you know the company and understand why the information  is nessary

This is not a bill. Do not mail. payment.
Retain this letter for your records.

004730A0116730

Exh 3 Pg 8

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867



June 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

Lutlautlmulltlllulustuullllualltuhlinllllutlilut

## PAYMENT DESCRIPTION

**Bank:**                        WACHOVIA BANK, NA
**Bank Account Number:**         ******0274
**Date of Transaction:**         May 30, 2007

**Payable To:**                  Axion Financial Services
**Amount of Payment:**           $2286.67

**Customer Reference:**          0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:38 A.M., May 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5867

Important Information
Don"t give out your bank account information over the phone unless you know the company and understand why the information   is nessary

This is not a bill. Do not mail. payment.
Retain this letter for your records.

004730A0116730



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-ca1

US Bank N.A.
Plaintiffs:

Vs.

Leroy Williams
Defendant(s)

## ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution
Served on April 11,2008. The court finds that (1) notice prescribed by rule 1.40 (e)
Was served on April 11,2008: (2) their was no record activity for the year preceding
Service of the foregoing notice: (3) no stay has been issued or approved by the court
And (4) no party has shown good cause why this action should remain pending.
Accordingly.

IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice
DONE AND ORDERED in chambers. at Miami. dade county. Florida this 31th day of
March .2005

SAMUEL I. ZADEL
Circuit Court Judge

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-ca1

US Bank .N.A.
Plaintiff(s)

April 1,2010

Vs.

Leroy Williams
Defendant(s)

ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution
Served on April 11,2008. The court finds that (1) notice prescribed by rule 1.40 (e)
Was served on April 11,2008; (2) their was no record activity for the year preceding
Service of the foregoing notice; (3) no stay has been issued or approved by the court
And (4) no party has shown good cause why this action should remain pending.
Accordingly,
IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice
DONE AND ORDERED in chambers, at Miami. dade county. Florida this 31th day of
March , 2010.

APR 06 201          APR 06 2010

CIRCUIT COURT JUDGE

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

CC-Allpaches

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original filed in this office    10/22    20 21
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

MONA BRUNO #79806

Bk 27244 Pg 4193 CFN 20100237159 04/09/2010 12:47:17 Pg 1 of 1 Mia-Dade Cty, FL

Exh. 6 Pg-1

3

ORDR

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

US BANK, N.A.,
    Plaintiff,

                        CASE NO.      2007-12407-CA
vs.                     DIVISION      32

LEROY WILLIAMS; MARK WELLS; FRANKLIN
CREDIT MANAGEMENT CORPORATION; CITY
OF NORTH MIAMI;
        Defendant(s).

_____/

## FINAL ORDER DISMISSING CASE, CANCELING FORECLOSURE SALE, CANCELING NOTICE OF LIS PENDENS, AND SETTING ASIDE FINAL SUMMARY JUDGMENT AND SUBSTITUTING PHOTOSTATIC COPIES

THIS CAUSE having come on before the Court, ex parte, pursuant to the Motion filed by the Plaintiff, pursuant to Section 702.07 Florida Statutes (2005), and the Court being otherwise fully advised in the premises, it is,

ORDERED AND ADJUDGED as follows:

1.     The case be and the same hereby is dismissed, but without prejudice to the future rights of the Plaintiff to bring an action to foreclose the mortgage which is the subject matter of the instant cause.

2.     All Counts of the Complaint against Defendants: LEROY WILLIAMS; MARK WELLS; FRANKLIN CREDIT MANAGEMENT CORPORATION; CITY OF NORTH MIAMI; are hereby dismissed.

3.     Any scheduled foreclosure sale is canceled.

FILE_NUMBER: F07012146



Serial: 13666522
DOC_ID: M010502



Bk 27343 Pg 949 CFN 20100451678 07/06/2010 15:32:32 Pg 1 of 3 Mia-Dade Cty. FL

Exh. 5 pg 2

4.    The Notice of Lis Pendens filed by Plaintiff and recorded in the public records of MIAMI-DADE County, Florida, regarding the below-described property:

> LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO
> THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF
> THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

be and same hereby is canceled, vacated, discharged and shall be of no further force or effect, and the Clerk is hereby directed to record this Order to reflect same.

5.    The Final Summary Judgment heretofore entered on August 09, 2007, be and the same hereby is set aside and shall be of no further force or effect.

6.    The Plaintiff requests that the original Note and Mortgage be returned to the Plaintiff and photostatic copies shall be substituted in their place.

DONE AND ORDERED in Chambers in MIAMI-DADE County, Florida, this _____ day of _____, 2010.

JUN 2 3 2010

VALERIE R. MANNO SCHURR
Circuit Court Judge

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

Copies furnished to:
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
All parties on the attached service list.
F07012148 – M010502
GMAC-CONV–abrven





IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:   2010-61928 CA 01

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR RASC 2005AAHL3,

    Plaintiff,

-vs-

LEROY WILLIAMS, et al.,

    Defendants.

_____/

Proceedings had and taken place before the
Honorable Veronica Diaz, one of the Judges of said Court,
at the Miami-Dade County Courthouse, 73 West Flagler
Street, Miami, Florida, on Tuesday, the 19th day of
November 2019, commencing at the hour of 10:50 a.m., and
being a Hearing.

And procedurally, a Motion to Dismiss, at this stage of the litigation, is not proper, so we ask that Your Honor denies the motion.

MR. WELLS: Judge, they have been the ones that have been delaying the process, because they never came up with the note. And our case was dismissed with prejudice.

THE COURT: Right. So, unfortunately, the motion that you have filed and are asking the Court to hear today is very untimely. What you need to do is you need to retain the services of an attorney to be able to represent you properly, and that attorney should file specific motions to vacate, they should file specific appeals, but this Motion to Dismiss at this time is not a timely motion.

So, for me to hear this, it's simply going to end up in a denial.

MR. SYMONETTE: Okay.

MR. HURTES: Thank you, Your Honor. Would you like me to prepare an order?

THE COURT: Please.

MR. HURTES: Thank you.

(Thereupon, the proceedings were concluded at 11:00 o'clock a.m.)

Exh, 7

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

I, Aaron Arcella, Reporter, certify that I was authorized to and did report the foregoing proceedings, and that the transcript is a true and correct record of my notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 9th day of December 2019.

Exh.9

Return To:
Axiom Financial Services
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

2005R0793767
OR 23623 Pgs 3231 - 3250f (20pgs)
RECORDED 07/29/2005 12:41:05
MTG DOC TAX 11,562.00
INTANG TAX 896.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This document was prepared by:
Axiom Financial Services
10900 Stonelake Blvd Suite 350
Austin, TX 78759-5867

———————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

MIN 100176105062733202

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2005 together with all Riders to this document.
(B) "Borrower" is LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is Axiom Financial Services

100176105062733                                    0506273320

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS            Form 3010  1/01

-6A(FL) (0005).02
Page 1 of 16                    Initials
VMP MORTGAGE FORMS - (800)521-7291

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9 pg.

Lender is a
organized and existing under the laws of the State of California
Lender's address is 10900 Stonelake Blvd Suite 350
Austin, TX 78759-5867

(E) "Note" means the promissory note signed by Borrower and dated June 30, 2005
The Note states that Borrower owes Lender four hundred forty-eight thousand and
00/100                                                                        Dollars
(U.S. $448,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

100176105062733                    Initials LCW          0506273320

-6A(FL) (0005).01                Page 2 of 16                        Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9 Pg.3

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County       [Type of Recording Jurisdiction]
of MIAMI-DADE                                                                                   [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 3021230221050                                     which currently has the address of
15020 SOUTH RIVER DRIVE                                                                                    [Street]
MIAMI                                                                            [City], Florida 33167          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

1001761O5O62733                                  Initials                     O5O62733ZO

-6A(FL) (0005)02                               Page 3 of 16                              Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN,  CLERK

Exh.9.pg4

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s): LEROY WILLIAMS | Lender: Axiom Financial Services 10900 Stonelake Blvd Suite 350 Austin, TX 78759-5867 |
|---|---|
| | Loan #: ▮▮▮▮▮▮▮ |

**Property Address:**
15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

**Legal Description:**
LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 45, OF THE PUBLIC RECORDS OF MIAM-DADE COUNTY, FLORIDA.

Initials LW

MIN # 100176105062733202
AHL 610101 UFF

WILLIAMS
Page 1 of 1

Loan # ▮▮▮▮▮▮

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh 9 pg 5

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

1001761050627 33                    Initials: _____                    0506273320

-6A(FL) (0005).01                    Page 4 of 15                    Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9pg.

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

1001761050627 33                                            0506273320

Init.: ___

-6A(FL) (0005)07                     Page 5 of 16                     Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9 pg.7

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

100176105062733       Initials: _L U_       0506273320

-6A(FL) (0005).02       Page 6 of 16       Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 9 pg 8

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

100176105062733                    Initials _____            0506273320

-6A(FL) (0403) 02                 Page 7 of 16                    Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN,   CLERK

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

1001761050627 33      Initials _hiw_      0506273320

-6A(FL) (0005) 03      Page 6 of 16      Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 4

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

100176105062723

-6A(FL) (0505)02

Page 9 of 16

Initials L W

0506273320

Form 3010 1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

100176105062733      0506273320

Initials _____

-6A(FL) (0005).02      Page 13 of 16      Form 3010 1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh,1 pg.17

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

100176105962733                   Initials: _____          0506273320

-6A(FL) (0005).02                  Page 11 of 16                   Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 9 Pg. 13

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

· 100176105062733                Initials _Lcu_              0506273320

-6A(FL) (0005).02                 Page 12 of 16                   Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Book23623/Page3243   CFN#20050703767

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

100176105062733    0506273320

-6A(FL) (0005).01                Page 13 of 16                Form 3010  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN,  CLERK

Exh. 9 pg1

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

1001761050062733

Initials: _L.W._

0506273320

-6A(FL) (0005).02

Page 14 of 15

Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9 pg

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Camilla Robinson
CArretha Robinson

_Leroy Williams_ _____ (Seal)
LEROY WILLIAMS                    -Borrower

8152 NORTH WEST 15 MANNOR
FORT LAUDERDALE, FL 33322
                                 (Address)

Midelle Austin-willu

_____ (Seal)
                          -Borrower

                          (Address)

_____ (Seal)            _____ (Seal)
            -Borrower                                -Borrower

_____ (Address)         _____ (Address)

_____ (Seal)            _____ (Seal)
            -Borrower                                -Borrower

_____ (Address)         _____ (Address)

_____ (Seal)            _____ (Seal)
            -Borrower                                -Borrower

_____ (Address)         _____ (Address)

-6A(FL) (00051002)            100176105062733            0506273320

                              Page 15 of 16                Form 3016  1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.9 pg.17

STATE OF FLORIDA, Broward County ss:
The foregoing instrument was acknowledged before me this June 30,2005 by
LEROY WILLIAMS, a single man.

who is personally known to me or who has produced Vaild ID as identification.

Michelle Austin-Willis
Commission # DD080925
Expires Dec. 26, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

Notary Public

100176105062733   Initial ___   0506273320

-6A(FL) (0305).02   Page 16 of 16   Form 3010   1/01

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 11

# Interest Only ADJUSTABLE RATE NOTE

(LIBOR Six-month Index (As Published In
The Wall Street Journal) — Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

June 30, 2005

MIAMI
[City]

FL
[State]

15020 SOUTH RIVER DRIVE
MIAMI, FL 33167
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ $448,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Axiom Financial Services. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the 1st day of every month, beginning on August 1, 2005. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

MIN # 100176105062733202
INTNOTE1.UFF

WILLIAMS
Page 1 of 7

Initials: _____
Loan # ▉▉▉▉▉
AHL modified FannieMae 3530 (11/01)

F070121418

Exh. 11

# AFFIDAVIT OF FACT

**STATE: OHIO**

**COUNTY: FAIRFIELD**

The undersigned, Wesley Jarvis, Trustee for CUSIPONE Trust, hereby states and confirms that he is of legal age and competent to state on belief and personal knowledge that the facts set forth herein, as duly noted below are true, correct, complete and presented in good faith, establish that:

1. The CUSIP numbers attached for LEROY WILLIAMS, for an account bearing number 10017610506273202, were searched through independent databases, confirmed with trading desks, and at least one interest was confirmed as per the reports issued and attached as a result.

2. The Fund Manager, or other custodian(s) of the accounts of the fund(s) may have access to internal records indicating detailed data about the percentage of interest as held for the account of LEROY WILLIAMS.

3. More than one fund may have an interest in the accounts of LEROY WILLIAMS.

FURTHER AFFIANT SAYETH NOT.

Signed and sealed this ___30___ day of ___January___, in the Year of our Lord, two thousand twenty-two (2022).

All Rights Reserved.

For WESLEY JARVIS

_____
Wesley J. Jarvis, Trustee

Page 1 of 2

Exh. 11 pg. 2

## JURAT

State of _Ohio_                    )

Subscribed and Affirmed            )

County of _Fairfield_              )

On _January 3_ , 2022 before me, _Nia Tarrance_ (notary public) personally appeared **Wesley J. Jarvis** [ ] personally known to me or [ ] proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to above and acknowledged to me that he executed the same in his authorized capacity.

I now affix my signature and official seal to these affirmations.

_____ (Signature)

Notary Public State of _Ohio_                    Seal:

My Commission Expires: _5/16/26_

Page 2 of 2

Exh. 72

## Your CUSIP Results are as follows:

**LEROY WILLIAMS (ACCT 100176105062733202 [MIN])**
**Fidelity Advisor Strategic Real Return Fund**
Symbol:                     FSRAX
CUSIP:                      315912873

Inception Date:            9/7/2005
Net Assets:                $462,624,000.00 as of
                           12/3/2021
Portfolio Assets:          $462,624,000.00 as of
                           12/3/2021

## A little about the Fund:

Fidelity Strategic Real Return Fund seeks real return consistent with reasonable
investment risk by investing in domestic and foreign issuers using a neutral mix of
approximately 30% of inflation-protected debt securities, 25% floating-rate loans and
20% REITs and other real estate related investments.

Exh. 13 pg

## AFFIDAVIT

I Mack Wells was There in The Miami Dade County Court house on Flagler Street in Downtown Miami and I witness Judge Zabel Sign The Document To Dismiss with Prejudice on 04/26/2019 That was For The Case Number 2007-13467-CA01 And I'm also A witness that I saw it on The Docket Signed by Judge Zabel

Mack Wells

MACK WELLS

15026 S. River dr.
Miami Fla 33167

x Joanne Mitchell
Feb 1, 2022

Exh. 13 pg. 2

## AFFIDAVIT

I James Buckman was there in The Miami Dade Court House on Flagler Street in downtown Miami and I witness Judge Zabel signs The Document + Assures with Prejudice on 04/00/2022 That was For the Case no. 2007-13907-CA01, and I'm also witness That I saw it on the docket Signed by Judge Zabel

James Buckman Jr.
[illegible] Avenue
Miami Fl. 33169

X Janine Mitchell
Feb 1, 2022

Janine Mitchell
Notary Public - State of Florida
Commission # CC [illegible]
My Comm. Expires [illegible] 2[illegible]
Bonded Through National Notary Assn.

# AFFIDAVIT

I Maurice Symonette was there in the Dade County Courthouse on Flagler Street in Downtown Miami and witnessed Judge Zabel Sign The Document To Dismiss With Prejudice on 04/06/2009 That was For The Case: 2007-12407-CA09, and I take witness That I saw it on The docket Sign Judge Zabel

MAURICE Symonette
15605 S. River Dr.
Miami Fla. 33167

X _____
Feb 9, 2022

**Exh.6 pg.15**

# FORM 6    FULL AND PUBLIC DISCLOSURE OF    2008
## FINANCIAL INTERESTS

| | |
|---|---|
| FOR OFFICE USE ONLY: | COMMISSION ON ETHICS DATE RECEIVED |
| | JUN 2 6 2009 |

*******AUTO**3-DIGIT 331 12 P2   8

Hon Valerie R. Manno Schurr
Circuit Judge
Judicial Circuit (11Th)
Elected Constitutional Officer
Dade County Courthosue Rm 1105
73 W Flagler St
Miami, FL 33130-1731

PROCESSED

| | |
|---|---|
| ID Code | |
| ID No | 210380 |
| Conf. Code | |
| P. Req. Code | |

Manno Schurr , Valerie R.

CHECK IF THIS IS A FILING BY A CANDIDATE ☐

## PART A — NET WORTH

Please enter the value of your net worth as of December 31, 2008, or a more current date. [Note: Net worth is not calculated by subtracting your *reported* liabilities from your *reported* assets, so please see the instructions on page 3.]

My net worth as of _December 31_, 2008 was $ _2,800,357.00._

## PART B - ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry, collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use.

The aggregate value of my household goods and personal effects (described above) is $ _150,000.00_

| ASSETS INDIVIDUALLY VALUED AT OVER $1,000: DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| Home located in Miami-Dade (former Residence) | 700,000.00 |
| Home located in Miami-Dade (Residence) | 2,400,000.00 |
| Vail Colorado Condominium / Eagle County, Colorado | $ 300,000.00 |
| Bank Accounts, Stocks Bonds / Pension Accounts | $ 600,000.00 |
| Mercedes Benz 380 ML | $ 25,000.00 |

## PART C — LIABILITIES

| LIABILITIES IN EXCESS OF $1,000: NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| GMAC Mortgage (former Residence) P.O. Box 900 19, Louisville, Ky. | 91,438.00 |
| GMAC Mortgage (Residence) 1st & 2nd Mortgages P.O. Box 4622, Waterloo, IA | 995,000.00 |
| Wells Fargo Home Mortgage (Vail property) P.O. Box 650769, Dallas, Tx | 129,000.00 |
| Huntington National Bank (Mercedes) P.O. Box 182579 Columbus, Ohio 43218-2579 | 9,205.00 |

| JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE: NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| NONE | |

CE FORM 6 - Eff. 1/2009      (Continued on reverse side)      PAGE 1

Exh.16 pg.1

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT

## IN AND FOR

## MIAMI DADE COUNTY FLORIDA CIVIL ACTION

MAURICE SYMONETTE

Plaintiff

CASE NO: 2021-

10826-CA01

v.

U.S. BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR RASC
2005AAHL3, MERS, FRANKLYN
CREDIT MANAGEMENT CORP and
AXIOM FINANCIAL SERVICES

Defendants,

## MOTION AND AFFIDAVIT FOR RELIEF, RECUSAL, VACATION OF ORDERS AND MEMORANDUM OF LAW

Pursuant to Florida Stat. 112.131, Florida Rule 2.160 (H) and Federal Rules of Civil Procedure Rule 60, Plaintiff MAURICE SYMONETTE hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the June 25 2010 Valerie Manno Schurr Freview of the record and Final Judgement Order, Exhibit.J because it injured us. based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibits # B) Attached- U.S. BANK Special Situation Property Funds Account Page 42, IFRS 2018 Tables 9-13. SEC Filings- U.S. BANK Florida Subsidiaries, Judge Valerie Manno Shurr Financial Interests & Property Disclosures).

## *Florida Rule 2.160 (H) Says A Judge must Vacate her orders for Conflict of Interest LIKE THE ORDERS JUDGE VALERIE*

Exh. 16 pg. 2

## MANNO SHURR DID IN THE ILLEGAL EXPARTE HEARING 06/25/2010 WHERE SHE CHANGED THE ORDER OF DISMISSAL WITH PREJUDICE TO DISMISSAL WITHOUT PREJUDICE AND RETURN THAT BACK TO DISMISSED WITH PREUDICE AND ALL HER OTHER ORDERS SHE DID IN THE NEW CASE 2022, Theodore R. Bundy V. Judge John A. Rudd, Fl. Rule 2.160 (D) (1), Fl. Code Jud. Conduct Canon 3E (1) A Judge shall disqualify herself where impartiality might reasonably be questioned Rule 2.160 (D) (1) and grounds to disqualify is a party fears that the Judge is Biased, Fl. Statue 112.312 (8) and Judge can't have a conflict of Interest!

Judge Valerie Schurr must Recuse herself for an open obvious Conflict of Interest because she's and was doing business with US Bank, GMAC and OCWEN and helping them to make money so that she can make money by foreclosing and taking (stealing) our property while acting as the Judge on the case on our property, not on case's Merits but for to make her and them money Illegally. Here's proof.

## NOW I'M REPORTING JUDGE SHURR TO THE ADMINISTRATIVE JUDGE WHO APPOINTS JUDGES TO CASES, GOVERNOR DE SANTIS, THE JQC, THE BAR, THE US DOJ, THE FBI, THE FLORIDA STATE ATTONEY AND MEDIA FOR OBVIOUS RACIST MISCONDUCT, BY TOTALLY IGNORING FLORIDA STATUTES-RULES AND FOR CRAZY OBVIOUS CONFLICTS OF INTEREST

Exh. 16 pg. 3

Because something strange has Happened out of nowhere! Judge Valerie *Manno Schurr's SIGNATURE and NAME shows up on the DISMISSAL WITH PREJUDICE that was done by Judge ZABEL's Order of Dismissal With* PREJUDICE 04/07/2010 THE YEAR AFTER Judge Valerie Manno Shurr BECOMES JUDGE RIGHT BEFORE SHE mistereouly dose another Dismissal with Prejudice 04/07/2010 exactly one year after Judge Zabel's   /   /   Order of Dismissal With Prejudice to take over our case to save U.S. BANK FROM US and save JUDGE ZABEL, THEIR LAWYERS FROM THE WRATH OF THEIR BOSS

**GMAC (US BANK)** WHO HAD ALREADY PAID THEM TO SAVE U.S. BANK FROM US. JUDGE VALERIE MANNO SHURR *is who we're just now finding out* that THE BANKS PAID HER TO TRICK US INTO BELIEVING THAT WE WERE SAFE FROM US BANK WITH THE DISMISSAL WITH PREJUDICE AND THEN THREE MONTHS LATER JUDGE VALERIE MANNO SHURR CHANGES IT TO DISMISSAL WITHOUT PREJUDICE IN AN ILLEGAL EXPARTE HEARING WITHOUT US KNOWING SO THAT US BANK COULD AND START THE SAME CASE OVER WITHOUT NOTICE TO US! WHY DID **GMAC (US BANK)** PAY JUDGE VALARIE MANNO SHURR TO AKE OVER OUR CASE WAS BECAUSE JUDGE ZABEL *DISMISSED WITH PREJUDICE US BANK'S CASE   /   /2009 AS SEEN ON THE* DOCKET CASE NUMBER 2007-12407-CA-01 LINE 10, Exh. C. And FORD MOTOR *CO. V. CALLOWAY SAYS A JUDGE CAN'T CHANGE ANOTHER JUDGE'S ORDER SO,* JUDGE VALARIE MANNO SHURR FILED HER DUPLICATE DISMISSAL WITH *PREJUDICE SAMPLE ZABEL'S ORDER FILED   /   /   AND SHURR'S*

Exhibit 9-4

DUPLICATE ORDER FILED 04/07/2010 AS SEEN ON THE DOCKET CASE NUMBER 2007-12407-CA-01 LINE 10 AND 11, Exh. C. ALL DONE SO THAT SHE COULD IN AN ILLEGAL EXPARTE HEARING IN VIOLATION OF FLORIDA STAT. 702.07 WITH THE PLAINTIFF US BANK CHANGE HER OWN ORDER TO DISMISSAL WITHOUT PREJUDICE, Exh. F. TO HELP **_GMAC (US BANK)._** _STEAL SO THEY CAN ALL MAKE MONEY OFF OF HELPLESS BLACKS. USING BIG BAD JUDGES AND LAWYERS!_ The Proof that JUDGE VALARIE MANNO SHURR made MONEY to help them is on her Form 6 FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTEREST SWORN AFFIDAVIT OATH of 2008 that shows on Part C. Liabilities section that a1She has $995,000.00 and $91,498.00 from GMAC which is the Servicer and owner RESIDENTIAL FUNDING CORPORATION in their notice of transfer said they were controlling our payments as Servicer from at least 1/1/2007 on the Mortgage Payment Coupon at the bottom of the Transfer Letter, Exh.S. and $129,000,00 from Wells Fargo which is US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3, Exh.(DD). And Judge Shurr has $129,000,00 from Wells Fargo which is US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3, Exh.(DD ) then in 2009 form 6 it shows GMAC MORTGAGE of $410,000.00 and Credit line with GMAC, and $128,000 Wachovia which is Wells Fargo which is US BANK, Exh.(EE) and then she allows an Illegal Ex parte Hearing with US Bank National Attorneys to change her _order which is really Judge Zabel's Order from DISMISSED WITH PREJUDICE in_ April 6th, 2010 Exh. (F3) to change the Dismissed with Prejudice 3 months later

Exh6pg 5

in June 27th 2010 into DISMISSED WITHOUT PREJUDICE In this Ex parte hearing Exh.(F). which is only supposed to be done with only the Defendants that are about to lose their home to the Foreclosure Sale and this must be done before the sale of the House according to Fl. Statute 107.07, (during the interim GMAC also had a Florida Default Letter as the Servicer) and after that wonderful gift Judgement to US Bank National Association and helping Judge Zabel out of the mess for doing a Judgment without a Docketed Complaint, Note, Allonge, Mortgage or an Assignment from the Records which was literally Criminal, Thievery of our house. Then suddenly In her 2010 Form 6 Disclosure of Financial Interest , Exh.(FF), it shows a $400,000.00 gift from GMAC and shows $1,000,000.00 from Wells Fargo which is US Bank, Exh. (EEE). All of this is pay to Play RICO Conspiracy to Steal Black Peoples Houses *which they're also doing to White European Gentiles!* US BANKS only lawful Remedy was to Appeal the Dismissal with Prejudice within 30 days according to Florida Appelate Rule 4 (a)(1)(A). But now a case that was Dismissed with Prejudice was given life again by *Judge Valerie Manno Schurr's illegal Ex parte hearing and changing the Dismissal* with Prejudice to Dismissal without Prejudice which allowed US BANK to secretly file another Foreclosure Case against the House at 15020 South River Drive Miami Florida 33167 and US Bank did file another case which was a continuance of the same Case from 2007 which is called Case Number 2007-12407-CA01 that was Dismissed with Prejudice and Secretly changed to Dismissed without Prejudice and without any notice to us in 2010 called Case number 2010-61928-CA01 this 2010

was also done without the Original Mortgage, Assignment and Docs. Original of the Note, Allonge to the Note, and the second Allonge from Fannie Mae or indemnification info that indemnifies Fannie Mae and there must be the Loan Number, Date and the printed name of the Signer as required by Federal Fannie Mae Rules B8-3-04 for Fannie Mae of which none of this is on the copy of the Allonge recorded on the Docket, Exh. LL. And JUDGE VALERIE MANNO SHURR has taken my new Case again to finish what she started by Ruling in favor of US BANK and GMAC *with worst Conflicts of Interests that she's trying to hide so that she can Rule in the . Bank's Favor to illegally. Because* in her FORM 6 - 2019 and 2020 Financial Disclosure Affidavit she has over 11,192,000.00 million, plus on line 5 she states that she has a $400,000.00 Mortgage with City National Bank that is Royal Bank of Canada which is Wells Fargo, Exh. SS. and Wells Fargo is US Bank the Bank Judge Valerie Manno Shurr is helping to illegally Foreclose on us, Exh. TT. The other conflict *is Shurr's $400,000.00 Mortgage Holder City National Bank that is Royal Bank of Canada* Which is Morgan Stanly/ JP MORGAN, Exh. VVV, which is US BANCORP/ US BANK, Exh. W. and Exh. X. all this is CITY NATIONAL BANK Exh. SS, Who Merged with Wachovia Bank who admitted the were SLAVE MASTERS OF BLACK PEOPLE, Exh.UU. *to just take CRIPLE HELPLESS BLACK PEOPLE'S HOMES. I will investigat how this* Judge accumulated 11 million dollars on a JUDGE'S SALLARY , I Demand to see where all that money This is the BANK that was served my law suite by an official Servicer acknowledge by US BANK which by Florida Statute they hod only 20 days to answer but they never answered for six months while we trying to Default them the whole

time, yet JUDGE VALERIE MANNO SHURR with her millions of dollars of Conflicts of interest helped US Bank by not ever Defaulting them no matter what the laws and rules say I Really don't stand a chance in this fight because the referee (JUDGE SHURR) is being paid by my Opponents to Rule only in their (US BANK'S GOLIATH'S) favor I AM Detroyed and CRUCIFIED by these Wicked Animals who break all the Laws and kill BLACK PEOPLE and hold themselves not GUILTY by these CROOKED EVIL JUDGES like JUDGE VALERIE MANNO SHURR and I know they are Plotting to KILL me right now, K.J.V. BIBLE= ZECHARIAH 11:5!!!!! Axiom Financial Services now refered to as (AFS) is the Bank the Note was done with and (AFS) sold the Note with the MIN. Account number 100176105062733203{M at the bottom of each page of the adjustable rate Note Exh.(NN) with the Cusip Number 315912873 to Fidelity Strategic Real Return Fund according to the CUSIP search by CUSIPONE EXPERT CUSIP search service as stated by The Expert Witness Affidavit of Fact Wesley Jarvis, Trustee for CUSIPONE Trust, Exh. (OO). The (AFS) Note was sold by (AFS) 9/7/2005 three months after Leroy Williams signed the (AFS) Note and is with Fidelity Strategic Real Return Fund until this day according to The CUSIPOne Expert Witness Exh. (PP) So the (AFS) Note never went to US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3 now referred to as (USB). So (USB) cannot Foreclose on this (AFS) Note nor anyone of the above stated Defendants because they don't own the Note and even Fidelity Strategic Real Return Fund cannot Foreclose because (USB) in 2007 did a Publigation to Foreclose on the (AFS) Note and Fidelity Strategic Real Return Fund did not Object

Exh. 16 Pg. 6

or Intervene within 30 days of the publication of the Foreclosure of 2007 of Fidelity Strategic Real Return Fund standing to Foreclose according to Fl. Stat. () Exh. (pp) or any Interest in the Note and therefore they have no standing. And according to the SEC - FASB GAAP Rules once a Note is sold on the Market it must be burned and Destroyed because a Note cannot exist at the same time that a stock, bond or fund exist because that is Double Dipping using the Fund and the Note ILLEGALLY. 6.Plaintiff has had exclusive, complete, actual, open, notorious, hostile, and continuous possession of the Property adverse to defendants for more than 17 years. Plaintiff has made and paid for all repais and upkeep, on the property for the past 17 years..

Judge Valerie Manno Schurr says that GMAC BANK on her form 6 full and public disclosure of Financial interests is a Bank she's doing business with, because she's doing business with GMAC/ U.S. BANK and helping them to make money so that she can make money by foreclosing and taking our property proof: In her Form 6. from Tallahassee called FULL AND PUBLIC DISCLOSURE OF FINANCIAL, form 6, Exh. A. Says on line 5 and 6: Judge Valerie Schurr is Doing Business with GMAC with a Mortgage from GMAC for $91,438.00 and $995,000.00, And GMAC BANK is U.S. BANK, Exh. E1. and E2. Because in her FORM 6 - 2019 and 2020 Financial Disclosure Affidavit she has over 11,192,000.00 million, plus on line 5 she states that she has a $400,000.00 Mortgage with City National Bank that is Royal Bank of Canada which is Wells Fargo, Exh. SS. and Wells Fargo is US Bank the Bank Judge Valerie Manno Shurr is helping to illegally Foreclose on us, Exh. TT. The other conflict is Shurr's $400,000.00 Mortgage Holder City National Bank that is Royal Bank of Canada Which is Morgan Stanly/ JP MORGAN, Exh. VVV, which is US BANCORP/ US BANK, Exh. W. and Exh. X. all this is CITY NATIONAL BANK Exh. SS, Who Merged with Wachovia Bank who admitted the were SLAVE MASTERS OF

BLACK PEOPLE, Exh.UU. to All of this is a major Conflict of Interest. She and other Judges who have the same conflict of interest has ruled in favor of, U.S. Bank, EXH. C F. of these Conflict of Interest against us and there's more. I have found that our case was directed to her and other Judges in this Pool, So she must recuse herself and vacate her Order, Exh. F, So Valerie Schurr you must Recuse YOUR SELF VACTE ALL YOUR ORDERS NOW! AND I PRAY THAT YOU DON'T SPACE FOR ANNOTHER JUDGE TO ORDER THA T YOUR ORDER TO DISMISS WITHOUT PREJUDICE IS ILLEGALLY BE UPHELD!

## FACTUAL BACKGROUND

1. Judge Zabel got very angry with U.S. Bank and decided to dismiss the case with Prejudice between 2007 and 2008 but Judge Valerie Manno Shurr some how ended up being the Judge who signed the Order On APRIL 6, 2010 Judge Valerie Schurr issued a final Judgment order Exhibit.A IN FAVOR of Leroy Williams to dismiss the Foreclosure case against him with Prejudice whose property is now Quitclaimed to Plaintiff Maurice Symonette in the former case no: 07-12407CA01 where U.S. BANK could never produce the promissory Note though they were asked by the Judge several times but never did bring it forth, Exhibit. I. and then after three months and GMAC doing business (Payoff) Judge Valerie Manno Shurr ! on June. 25 2010, issued a Issued another Order that changed Zabel and Valerie Manno Schurr's Order from dismissed with Prejudice to suddenly dismissed without Prejudice in an illegal Ex Parte hearing with her and her Business Partner's U.S. Bank/GMAC and Judge Valerier Manno Schurr is now the same Judge with the same Conflicts of Interest rulling on the same case and property with the same business partners against Maurice Symonette concerning the same property this is wide open Crazy! And Sad! That this Court is Strong Arming. Bullying and just taking our house like gangsters with the Full strength of the Police against the helpless these gangster ways has her now gone and went from a few Million Dollars to now over $20 million Dollars with the same business Partners as a quasi-defense attorney for U.S. BANK her

Exh. 16 pg1C

personal investment Partner to make money together. Plaintiff MAURICE SYMONETTE has now subsequently provided the United States Department of Justice (DOJ) on specific newly discovered whistle blower information and records regarding millions of dollars in exposed fraudulent foreclosure claims made by the Defendants U.S. BANK, Clerks and Court officers in this action. Exhibit, O. GMAC does not own the Note.

## MEMORANDUM OF LAW

The Defendants maintains timely Constitutional due process civil rights for Florida Rule 2.160 (H) and Federal Rule 60 Relief to close this case with the original Dismissal with Prejudice in our Defendants favor with requirement of Valerie Schurr Recusal based on exposed financial conflicts of interests Fla. Stat.112.312 (8)(9).

*Rule 2.160 (H) and FRCP Rule 60, relief from .Judgment Or Order and to Vacate Order .*

*There is to be no conflict of interest with the Judge and the Plaintiff against DEFENDANTS. LIKE*

*(1) mistake, inadvertence, surprise, or excusable neglect;*

*(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);*

3. Fraud whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an Opposing party

A Judge is expected to Recuse herself according to Fla. Code Jud. Conduct, Canon 3E (1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and pursuant to 28 U.S, C. § 455 Under § 455(a), Recusal is mandatory in "any proceeding in which Judge's impartiality might reasonably be questioned." Under Fla. Code Jud. Conduct, Canon 3E (1)

4.    The Notice of Lis Pendens filed by Plaintiff and recorded in the public records of MIAMI-DADE County, Florida, regarding the below-described property

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO
THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF
THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

be and same hereby is canceled, vacated, discharged and shall be of no further force or effect, and the Clerk is hereby directed to record this Order to reflect same.

5.    The Final Summary Judgment heretofore entered on August 09, 2007, be and the same hereby is set aside and shall be of no further force or effect.

6.    The Plaintiff requests that the original Note and Mortgage be returned to the Plaintiff and photostatic copies shall be substituted in their place.

DONE AND ORDERED in Chambers in MIAMI-DADE County, Florida, this _____ day of _____, 2010.

**JUN 2 3 2010**

_____
VALERIE R. MANNO SCHURR
Circuit Court Judge

**VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE**

Copies furnished to:
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
All parties on the attached service list:
F07012148 – MGT0592
UMAC-CONV~aheron

Case 1:23-cv-22640-JEM   Document 59   Entered on FLSD Docket 06/11/2024   Page 80 of 109

Exh.16 pg.12

and § 455(b), a judge is expected to disqualify herself whenever any of the five statutorily prescribed criteria can be shown to exist in fact; even if no motion or affidavit seeking such relief has been filed, and regardless of whether a reasonable person would question the judge's impartiality.

Fla. Code Jud. Conduct; Canon 3E(1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and Section 455(b) he shall also disqualify himself in the following circumstancess.

*(4)  He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings*

*(d)(4)  "financial interest" means ownership of a legal or equitable interest, however small*

## CONCLUSION

This Motion for Relief by Vacating Order Judgments Florida Rule 2.160 (H)  and Recusal is based on new facts, related to a whistle blower's information, willful blindness, fraud, misconduct, and discovered evidence unknown at the time of the original Complaint filing Plaintiff could not reasonably know the financial dealings with Defendants of a yet to be assigned judge before the original Complaint filing As previously displayed by his Dismissal Order, due to cited improper financial conflicts of interest, Judge Valerie Schurr was incapable of impartially and without animus against Pro-Se Plaintiff or to exercise unbiased judicial duties required for due process justice in this case knowingly because nobody forgets how and why they get $995,000.00 at the time that we asked THE ACTUAL JUDGE, JUDGE ZABEL to Dismiss our case With Prejudice. So that JUDGE VALERIE MANNO SHURR was paid to and would change the Order to DISMISSAL WITHOUT PREJUDICE!!!

Judge Valerie Schurr has creditor loan history and business with Defendant U.S BANK MERS and GMAC that caused  THIS

preferential Quid Pro *Quo* treatment by her sua sponte review and Final Judgment Order. Judge Valerie Shurr has significant exposed investor financial interests in the subject matter in controversy and with Defendants U.S. BANK that will be substantially negatively affected by the outcome of that proceedings when the Plaintiff "ultimately prevails and promotes in paid for adds in the media. Because people can't win when the Judge is on the side of the Banksters to steal property and money off their Prey!

Example of Judges who already recused themselves from U.S. BANK

1. JUDGE DARRIN P. GAYLES Exhibit, P.
2. THOMAS WILLIAMS Exhibit, Q.
3. JUDGE BARBARA ARECES Exhibit R.


## REQUIRED RELIEF


Pursuant to Fla. Code Jud. Conduct, Canon 3E(1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and Federal Rules of Civil Procedure Rule 60, Plaintiff requires Relief from the June 25, 2010 Final judgment Order [Exhibit.J. based upon the stated facts, just terms, cited misconduct, Rule 60 grounds and newly discovered banking real estate fraud by court officers.

Said Reopening Relief would require the vacating of his order and Recusal of Judge Valerie Schurr from this and any future related U.S. BANK banking real estate cases in this District. The Dismissal Order Relief also requires that all parties be reinstated to their prior positions in this action (Dismissal with Prejudice) requiring Clerk issuance of Summons upon the Defendants and allow the filing of a Motion to dismiss the Final Judgment for cause, grounds and reasons stated herein filed.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 5th day of Jan. 2020 a true and correct copy of the foregoing was provided via this Court's electronic filing system to the attorneys of record

MAURICE SYMONETTE
15020 S. RIVER DR.
MIAMI FL. 33167

Loan No: ▓▓▓▓▓▓▓▓▓

Mortgagee: LEROY WILLIAMS

Address:   15020 SOUTH RIVER DRIVE
           MIAMI, FL 33167

Loan Amount: $ 146,300.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

### RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Assistant Secretary
Axion Financial Services

U.S. Bank National Association as Trustee
PAY TO THE ORDER OF
WITHOUT RECOURSE
Residential Funding Corporation

By Judy Faber, Vice President

MIN # 100176105062733202
AMI 682017.bff

WILLIAMS
Page 1 of 1



Exh.17 pg1





CFN 2008R0941616
OR Bk 26657 Ps 3525? (1ps)
RECORDED 11/20/2008 07:41:11
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

# ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F.S.§695.26

FOR VALUE RECEIVED, on or before April 19, 2007, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC, ("Assignor") whose address is _____ assigned, transferred and conveyed to: U.S. BANK N.A., ("Assignee") whose address is 1106 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005 and recorded July 29, 2005 in Official Records Book 23623 at Page 3231 of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on ___October 21___, 2008.

Witness
Typed Name: Peggy Hong

Witness
Typed Name: Laurie Kilroy

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC
By: _____
Typed Name: SHIRLEY EADS
Title: VICE PRESIDENT

Attest: _____
Typed Name: Jeffrey Stephan
Title: Assistant Secretary

(Affix Corporate Seal)

STATE OF Pennsylvania
COUNTY OF _____

BEFORE ME, the undersigned, personally appeared SHIRLEY EADS and Jeffrey Stephan as Vice President and Assistant Secretary respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC this 21st day of October, 2008.

Notary Public: _____
My commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Susan Turner, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Nov. 9, 2011
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Ralph McGrady
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F07012148-GMAC MORTGAGE, LLC- 7440183937

FILE_NUMBER: F07012148

DOC_ID: M001100

# *F07012148*

# *M001100*

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office November 19 AD 20 21
HARVEY RUVIN, CLERK of Circuit and County Courts.

Deputy Clerk ___/s/ Wilfred Clark e323263___

28489871



Exh. 19 pg.1

EXECUTION VERSION

RESIDENTIAL ASSET SECURITIES CORPORATION,

Company,

RESIDENTIAL FUNDING COMPANY, LLC,

Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION,

Trustee

AMENDMENT NO. 1

TO

POOLING AND SERVICING AGREEMENT

Dated as of September 27, 2007

Home Equity Mortgage Asset-Backed Pass-Through Certificates

Series 2005-AHL3

TT   EX. ( B )  Comp
Filed 4-29 A.D. 2011
Case No. 10-61928-CA05
HARVEY RUVIN
Clerk Circuit Court

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

OHS West:260308944.2

Exh. 19. po

THIS AMENDMENT NO. 1 TO POOLING AND SERVICING AGREEMENT dated as of September 27, 2007 (this "Amendment"), is among RESIDENTIAL ASSET SECURITIES CORPORATION, a Delaware corporation, in its capacity as depositor (the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, a Delaware limited liability company, in its capacity as master servicer (the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, a banking association organized under the laws of the United States, in its capacity as trustee (the "Trustee"). Capitalized terms used in this Amendment and not otherwise defined herein will have the meanings assigned to them in the Pooling and Servicing Agreement dated as of November 1, 2005, among the Company, the Master Servicer and the Trustee (the "Pooling Agreement").

## WITNESSETH

WHEREAS, RESIDENTIAL ASSET HOLDINGS II, LLC ("RAHII"), a subsidiary of the Master Servicer and current holder of the Class SB Certificates, wishes to sell the Class SB Certificates;

WHEREAS, in an effort to reflect the underlying economics of this sale for financial reporting purposes, the Master Servicer and RAHII wish to take certain actions to cause the trust created by the Pooling Agreement to satisfy the qualifying special purpose entity requirements set forth in the relevant accounting statements;

WHEREAS, one of these actions is to amend the Pooling Agreement to delete Section 4.09;

WHEREAS, the Company, the Master Servicer and the Trustee desire to amend the Pooling Agreement to delete Section 4.09 and RAHII, as the Class SB Certificateholder, consents to such amendment as the only class affected thereby;

WHEREAS, Section 11.01(b) of the Pooling Agreement provides that the Pooling Agreement may be amended as follows; and

WHEREAS, the Company hereby authorizes and directs the Trustee to enter into this Amendment on the terms provided herein and the Trustee, by execution of this Amendment, complies therewith.

NOW, THEREFORE, the parties hereto agree as follows:

SECTION 1.   Amendments.

(a)     Section 1.01 of the Pooling Agreement is hereby amended in respect of the defined terms "Derivative Contract" and "Derivative Counterparty", which are hereby deleted.

(b)     Section 4.03(a)(xxi) of the Pooling Agreement is hereby amended as follows:

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

OHS West:260308944.2

Exh. 19 p.

(i)   Section 4.03(a)(xxi) [Reserved]

(c)   Section 4.09 of the Pooling Agreement is hereby amended as follows:

(i)   Section 4.09. [Reserved]

(d)   All cross references in the Pooling Agreement with respect to Section 4.09 are hereby deleted.

(e)   Section 9.01 is hereby amended in respect of subsection (a) by replacing such subsection in its entirety with the following:

(i)   Section 9.01(a).   Subject to Section 9.02, the respective obligations and responsibilities of the Depositor, the Master Servicer and the Trustee created hereby in respect of the Certificates (other than the obligation of the Trustee to make certain payments after the Final Distribution Date to Certificateholders and the obligation of the Depositor to send certain notices as hereinafter set forth) shall terminate upon the last action required to be taken by the Trustee on the Final Distribution Date pursuant to this Article IX following the earlier of:

(i)   the later of the final payment or other liquidation (or any Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund or the disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan, or

(ii)   at the option of the Master Servicer, the purchase of all Mortgage Loans and all property acquired in respect of any Mortgage Loan remaining in the Trust Fund, at a price equal to 100% of the unpaid principal balance of each Mortgage Loan (or, if less than such unpaid principal balance, the fair market value of the related underlying property of such Mortgage Loan with respect to Mortgage Loans as to which title has been acquired if such fair market value is less than such unpaid principal balance) (and if such purchase is made by the Master Servicer only, net of any unreimbursed Advances attributable to principal) on the day of repurchase, plus accrued interest thereon at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of any Modified Mortgage Loan), to, but not including, the first day of the month in which such repurchase price is distributed;

*provided, however,* that in no event shall the trust created hereby continue beyond the expiration of 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof; and *provided further,* that the purchase price set forth above shall be increased as is necessary, as determined by the Master Servicer, to avoid disqualification of any REMIC created hereunder as a REMIC.

The purchase price paid by the Master Servicer pursuant to Section 9.01(a)(ii) shall also include any amounts owed by Residential Funding pursuant to the last

CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

*Exh. 19. pg*

paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the representation and warranty set forth in clause (xlvi) of Section 4 of the Assignment Agreement that remain unpaid on the date of such purchase.

The right of the Master Servicer to purchase all of the Mortgage Loans pursuant to clause (ii) above is conditioned upon the date of such purchase occurring on or after the Optional Termination Date.  If such right is exercised by the Master Servicer, the Master Servicer shall be deemed to have been reimbursed for the full amount of any unreimbursed Advances theretofore made by it with respect to the Mortgage Loans being purchased.  In addition, the Master Servicer shall provide to the Trustee the certification required by Section 3.15, and the Trustee and any Custodian shall, promptly following payment of the purchase price, release to the Master Servicer the Mortgage Files pertaining to the Mortgage Loans being purchased.

In addition to the foregoing, on any Distribution Date on or after the Optional Termination Date, the Master Servicer shall have the right, at its option, to purchase the Class A Certificates, Class M Certificates and Class SB Certificates in whole, but not in part, at a price equal to the sum of the outstanding Certificate Principal Balance of such Certificates plus the sum of one month's Accrued Certificate Interest thereon, any previously unpaid Accrued Certificate Interest, and any unpaid Prepayment Interest Shortfalls previously allocated thereto and, in the case of Prepayment Interest Shortfalls, accrued interest thereon at the applicable Pass-Through Rate through the date of such optional termination.  If the Master Servicer exercises this right to purchase the outstanding Class A Certificates, Class M Certificates and Class SB Certificates, the Master Servicer will promptly terminate the respective obligations and responsibilities created hereby in respect of these Certificates pursuant to this Article IX.

SECTION 2.   Effect of Amendment.

Upon execution of this Amendment, the Pooling Agreement shall be, and be deemed to be, modified and amended in accordance herewith and the respective rights, limitations, obligations, duties, liabilities and immunities of the parties thereto shall hereafter be determined, exercised and enforced subject in all respects to such modifications and amendments, and all the terms and conditions of this Amendment shall be deemed to be part of the terms and conditions of the Pooling Agreement (as applicable) for any and all purposes.  Except as modified and expressly amended by this Amendment, the Pooling Agreement is in all respects ratified and confirmed, and all the terms, provisions and conditions thereof shall be and remain in full force and effect.

SECTION 3.   Binding Effect.

The provisions of this Amendment shall be binding upon and inure to the benefit of the parties hereto, any Certificateholder and each of their respective successors and assigns.

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

OHS West:360308944.2                                  3



Exh.19

SECTION 4.  Governing Law.

This Amendment shall be governed by and construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

SECTION 5.  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Amendment shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Amendment and shall in no way affect the validity or enforceability of the other provisions of this Amendment or of the Certificates or the rights of the Certificate Insurer or the Certificateholders.

SECTION 6.  Section Headings.

The section headings herein are for convenience of reference only, and shall not limit or otherwise affect the meaning hereof.

SECTION 7.  Counterparts.

This Amendment may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

[Signature Pages Follow]

OHS West:260308944.2

4

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 19 p2

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

RESIDENTIAL ASSET SECURITIES
CORPORATION

By: _____
Name: Benita Bjergo
Title: Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By: _____
Name: Tim Jacobson
Title: Associate

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By: _____
Name:
Title: Authorized Signer

Acknowledged and agreed to by:

RFC ASSET HOLDINGS II, LLC,
as the sole owner of the Class SB Certificates

By: _____
Name: Diane Wold
Title: Vice President

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh 19 pg.

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

RESIDENTIAL ASSET SECURITIES CORPORATION

By:_____
    Name:
    Title:

RESIDENTIAL FUNDING COMPANY, LLC

By: _____
    Name:
    Title:

U.S. BANK NATIONAL ASSOCIATION, as Trustee

By: _____
    Name:   Michelle Moelle.
    Title: Authorized Signer

Acknowledged and agreed to by:

RFC ASSET HOLDINGS II, LLC, as the sole owner of the Class SB Certificates

By: _____
    Name:
    Title:

Amendment No. 1 to Pooling and Servicing Agreement (RASC

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.19 pg

STATE OF MINNESOTA    )
                                        ) ss.:
COUNTY OF HENNEPIN    )

On the _24_ day of September 2007 before me, a notary public in and for said State, personally appeared _T. m Jacobson_ . known to me to be an _Associate_ of Residential Funding Company, LLC, one of the limited liability companies that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such limited liability company executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

AMY SUE OLSON
Notary Public
Minnesota

[Notarial Seal]

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh-19 pg

STATE OF MINNESOTA    )
                      ) ss.:
COUNTY OF RAMSEY      )

On the 26th day of September 2007 before me, a notary public in and for said State, personally appeared **Michelle Moeller**, known to me to be an Assistant Vice President of U.S. Bank National Association, a banking association organized under the laws of the United States that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public



TRISHA L. WILLETT
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2012

[Notarial Seal]

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Amendment No. 1 to Pooling and Servicing Agreement (RASC...

Exh. 26

CFN 2012R0182835
OR Bk 28033 Ps 1695; (1ps)
RECORDED 03/13/2012 16:05:04
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

# CORRECTIVE ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY P.S.GNN.16

MERS phone number: 1-888-679-6377
MIN: 100176105062733202

FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES, ("Assignor") whose address is P.O. Box 2026, Flint, MI 48501, assigned, transferred and conveyed to: U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, ("Assignee") whose address is 1100 Virginia Drive, Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005, and recorded July 29, 2005, in Official Records Book 23623, at Page 3231, of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

as the same may have been amended from time to time.

The purpose of this Corrective Assignment of Mortgage is to correct the Assignment of Mortgage recorded on 11/20/2008 at 09:41:11 in 2008R0941616, of the official records of Miami-Dade County, Florida, by Harvey Ruvin, Clerk of Court.

* Changed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES as MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR HOMECOMINGS FINANCIAL LLC is not a valid entity

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument on _____ 14 _____, 2012.

By: _____
Print Name: Jacqueline Keeley
Title: Vice President

STATE OF Pennsylvania
COUNTY OF Montgomery

The foregoing instrument was acknowledged before me this 14 day of Feb 2012 by Jacqueline Keeley, for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES who is personally known to me.

Christine Morales
Notary Public:
My commission expires: 1/28/2015

Recording requested by, prepared under the supervision of and return to:
Ken Porter
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F10051160-GMAC MORTGAGE, LLC.

[INSERTDOC "M900105.rtf" KEEP_FONT]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

STATE OF FLORIDA COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original filed in this office.
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

F10051160

Exh. 2.1 Pg. 1

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION<br>☑ CIVIL<br>☐ CRIMINAL<br>☐ OTHER | EXHIBIT LIST | CASE NUMBER<br>10-41928-CA 05 |
|---|---|---|

| PLAINTIFF(S)/PETITIONER<br>US Bank<br>Willnae, La Croix | VS. DEFENDANT(S)/RESPONDENT<br>Leroy Williams<br>Maurice Symonette - Pro Se | CLERK IN<br>FILED FOR RECORD<br>NOV 29 2017 |
|---|---|---|

IN RE: Non-Jury Trial (Foreclosure)

JUDGE John Schlesinger    REPORTER Mya Alvena    DATE NOV 29 2017

| Description of Exhibits | PLT/PET ID | PLT/PET EX | DEF/RES ID | DEF/RES EX |
|---|---|---|---|---|
| Limited Power of Attorney | | 1 | | |
| Transfer Letter | | 2 | | |
| Original Note | | 3 | | |
| Copy of Mortgage | | 4 | | |
| Assignment of Mortgage | → | 5 | | |
| Default Letter | → | 6 | | |
| Transaction History | → | 7 | | |
| Pooling and Servicing Agreement | → | 8 Comp | | |
| Affidavit of Debt | → | 9 | | |
| | | | | |
| Clerk Notes: All Exhibits scanned & retained by the Clerk | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

James Kaishas
**COURT CLERK**                    **SUPERVISOR**

Exh 21 pg.2

{{DPLX}}

Filed 11-29 A.D. 20_17_ EX. (6)

Case No. 10-61928-CooS

HARVEY RUVIN
Clerk Circuit Court

06/03/10

LEROY WILLIAMS

PO BOX 222692

HOLLYWOOD      FL 33022-2692

RE: Account Number   7440183937
    Property Address  15020 SOUTH RIVER DRIVE

         MIAMI FL 33167

Dear LEROY WILLIAMS

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 01/01/07, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

| | | |
|---|---|---|
| Payments | $ | 156488.39 |
| Late Charges | $ | 6098.40 |
| Fees, Costs, and other amounts accrued to date | $ | 2922.28 |
| Suspense | $ | 0.00 |
| Total Amount Due | $ | 165509.07 |

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter. You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period. Payments must be made in certified funds or cashier's
check. If funds tendered are not honored for any reason, the
default will not be cured. Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.

(continued on back)

Exh 21 pg. 3

06/03/10
Account Number ████████
Page Two

You are hereby notified your credit rating may be adversely affected if you fail to fulfill the terms of your credit obligations. You are also notified we may visit the above-referenced property from time to time to determine its condition and occupancy status, the costs of which you will be responsible for.

Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings. This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your account up to five days prior to the foreclosure sale of the property if: 1) you pay the total amount due plus any fees, costs and other amounts accrued through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property, as well as your obligations under the loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by calling 800-569-4287. If you would like to discuss any matter contained in this notice, we encourage you to contact our loan counselors immediately at 800-850-4622.

Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

5020

Exh. 21 pg 4

```
* For Internal USE ONLY, NOT a Transaction History *
* For Internal USE ONLY, NOT a Transaction History *
```

TRN497CR-02                          HOMECOMINGS FINANCIAL                    5/21/07 14:19:39
MPRICE                            DETAIL TRANSACTION HISTORY                   JOB DT: * 5/01/07
                                                                                      PAGE:    1

| LOAN# ____3937  INV# 413 | POOL# 0200511  INV LN# ____5905  NEXT DUE  1/01/07 | INTEREST RATE  6.125 | PRIN.BAL  448,000.00 |
|---|---|---|---|
| BORR1 Leroy Williams | TYPE: 03-00 CONVENTION  STATUS R  TOT.DEL Q14,193.29 | SUSP-235B  .00 | ESC.BAL  .00 |
| BORR2 | MSGS: 20 40  &PMT D00004  P&I  9,146.68 | SUSP-SUBS  .00 | ESC.ADV  22,332.10 |
| PROP: 15020 South River Drive | MAIL: PO BOX 222692 | SUSP-HAZ  .00 | TOT.PMT  3,401.57 |
| | | SRVFEES .03750  SUSP-FOR  .00 | P&I  2,286.67 |
| Miami    FL 33167 | Hollywood    FL 330222692  YDIPF  .00000  SUSP-MIS  .00 | ESC.PMT  1,114.90 |
| | INT PD TO 12/01/06  P&I SHORT  .00 | CORP AD  .00 |

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | PRINCIPAL | ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS &SRV.FEES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 10/27/05 | 8102 | LOAN TRANSFER  S/F  REF# | 11/05 | 448000.00 | .00 | 448000.00- | 448000.00- | .00 | .00 | .00 | |
| 11 | 10/31/05 | 3199 | OLD INV #43/0200511  S/F TR REF# | 11/05 | .00 | .00  Eff Dt: 10/31/2005 | 448000.00  Batch: MASSXFER | 448000.00 | .00 | .00 | .00 | |
| 12 | 10/31/05 | 8199 | NEW INV 413/0200511  S/F TR REF# | 11/05 | 448000.00 | .00 | 448000.00- | 448000.00- | .00 | .00 | .00 | |
| 13 | 11/16/05 | 1499 | Late Charge  S/F  REF# | 11/05 | 448000.00 | .00 | 114.33 | .00 | .00 | .00 | .00 | 114.33 01 |
| 14 | 11/16/05 | 2664 | NON CASH FEE ADJ  S/F WC REF# | 11/05 | 448000.00 | .00 | 114.33- | .00 | .00 | .00 | .00 | 114.33-01 |
| 15 | 11/28/05 | 1325 | PMT-MISC SUSP  S/F CX REF# | 11/05 | 448000.00 | .00 | 2286.67 | .00 | .00 | .00 | 2286.67 PP | |
| 16 | 11/28/05 | 2625 | MISC ADJ  S/F CX REF# | 11/05 | 448000.00 | .00 | 2286.67- | .00 | .00 | .00 | 2286.67-PP | |
| 17 | 11/28/05 | 02 | PAYMENT  Days since last Paymt on: 10/31/2005  28  S/F CX REF# | 12/05 | 448000.00  Eff Dt: 11/28/2005 | .00 | 2286.67  Batch: 1126SUS2 | .00 | 2286.67  IPT Dt: 11/01/05 | .00 | .00 | 160.00 11 |
| 18 | 12/06/05 | 1499 | Speed Draft Fee  S/F  REF# | 12/05 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 19 | 12/06/05 | 02 | PAYMENT  Days since last Paymt on: 11/28/2005  8  S/F BA REF# | 1/06 | 448000.00  Eff Dt: 12/06/2005 | .00 | 2286.67  Batch: 1206ACHS | .00 | 2286.67  IPT Dt: 12/01/05 | .00 | .00 | 160.00 11 |
| 20 | 12/06/05 | 1407 | Speed Draft Fee  S/F C REF# | 1/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 21 | 1/05/06 | 1499 | Speed Draft Fee  S/F  REF# | 1/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 22 | 1/05/06 | 02 | PAYMENT  Days since last Paymt on: 12/06/2005  30  S/F BA REF# | 2/06 | 448000.00  Eff Dt: 01/05/2006 | .00 | 2286.67  Batch: 0105ACHS | .00 | 2286.67  IPT Dt: 1/01/06 | .00 | .00 | 160.00 11 |
| 23 | 1/05/06 | 1407 | Speed Draft Fee  S/F C REF# | 2/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 24 | 2/13/06 | 1499 | Speed Draft Fee  S/F  REF# | 2/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 25 | 2/13/06 | 02 | PAYMENT  Days since last Paymt on: 01/05/2006  37  S/F BA REF# | 3/06 | 448000.00  Eff Dt: 02/11/2006 | .00 | 2286.67  Batch: 0213ACHS | .00 | 2286.67  IPT Dt: 2/01/06 | .00 | .00 | 160.00 11 |
| 26 | 2/13/06 | 1407 | Speed Draft Fee  Effective date: 2/11/06  S/F C REF# | 3/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| 27 | 3/07/06 | 1499 | Speed Draft Fee | 3/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |

EX 7

Filed  11-29  A.D. 2011

Case No.  10-61928-____

HARVEY RUVIN
Clerk Circuit Court

Exh 21 pg5

TRN497CR-02
MFRICE

* For Internal USE ONLY, NOT a Transaction History *
* For Internal USE ONLY, NOT a Transaction History *
HOMECOMINGS FINANCIAL
DETAIL TRANSACTION HISTORY

5/21/07 14:19:39
JOB DT:   5/01/07
PAGE:      2

| ---TRANSACTION--- | | | NEXT | -AFTER TRANS.BALANCES- | | TOTAL | -----------APPLIED----------- | | | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|
| NBR  DATE  CODE | -----DESCRIPTION----- | | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW SUSPENSE/CD | &SRV.FEES |
| LOAN# 9937 | CONTINUED | | | | | | | | | |

28  3/07/06 02   PAYMENT
   Days since last Paymt on: 02/11/2006
      S/F MA  REF#

| 28 | 3/07/06 02 PAYMENT | 4/06 | 448000.00 | .00 | 2286.67 | .00 | 2286.67 | .00 | .00 | 140.00 11 |
| 24 | Eff Dt: 03/07/2006 | | Batch: 0307ACHS | | | IPT Dt: 3/01/06 | | | | |
| 29 | 3/07/06 1407 Speed Draft Fee | 4/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F C  REF# | | | | | | | | | |
| 30 | 4/11/06 1499 Late Charge | 4/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | 137.20 01 |
| | S/F  REF# | | | | | | | | | |
| 31 | 4/17/06 1499 Speed Draft Fee | 4/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F  REF# | | | | | | | | | |
| 32 | 4/17/06 02 PAYMENT | 5/06 | 448000.00 | .00 | 2423.87 | .00 | 2286.67 | .00 | .00 | 137.20 01 |
| | Days since last Paymt on: 03/07/2006 | | | | | | | | | |
| 39 | Eff Dt: 04/15/2006 | | Batch: 0417ACHS | | | IPT Dt: 4/01/06 | | | | 140.00 11 |
| | S/F MA  REF# | | | | | | | | | |
| 33 | 4/17/06 1407 Speed Draft Fee | 5/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | Effective date:  4/15/06 | | | | | | | | | |
| | S/F C  REF# | | | | | | | | | |
| 34 | 5/11/06 1499 Late Charge | 5/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | 137.20 01 |
| | S/F  REF# | | | | | | | | | |
| 35 | 5/16/06 1499 Speed Draft Fee | 5/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F  REF# | | | | | | | | | |
| 36 | 5/16/06 02 PAYMENT | 6/06 | 448000.00 | .00 | 2423.87 | .00 | 2286.67 | .00 | .00 | 137.20 01 |
| | Days since last Paymt on: 04/15/2006 | | | | | | | | | |
| 31 | Eff Dt: 05/16/2006 | | Batch: 0516ACHS | | | IPT Dt: 5/01/06 | | | | 140.00 11 |
| | S/F MA  REF# | | | | | | | | | |
| 37 | 5/16/06 1407 Speed Draft Fee | 6/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F C  REF# | | | | | | | | | |
| 38 | 6/12/06 1499 Late Charge | 6/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | 137.20 01 |
| | S/F  REF# | | | | | | | | | |
| 39 | 6/14/06 1499 Speed Draft Fee | 6/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F  REF# | | | | | | | | | |
| 40 | 6/14/06 02 PAYMENT | 7/06 | 448000.00 | .00 | 2423.87 | .00 | 2286.67 | .00 | .00 | 137.20 01 |
| | Days since last Paymt on: 05/16/2006 | | | | | | | | | |
| 29 | Eff Dt: 06/14/2006 | | Batch: 0614ACHS | | | IPT Dt: 6/01/06 | | | | 140.00 11 |
| | S/F MA  REF# | | | | | | | | | |
| 41 | 6/14/06 1407 Speed Draft Fee | 7/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F C  REF# | | | | | | | | | |
| 42 | 7/11/06 1499 Late Charge | 7/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | 137.20 01 |
| | S/F  REF# | | | | | | | | | |
| 43 | 7/13/06 1499 Speed Draft Fee | 7/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F  REF# | | | | | | | | | |
| 44 | 7/13/06 02 PAYMENT | 8/06 | 448000.00 | .00 | 2423.87 | .00 | 2286.67 | .00 | .00 | 137.20 01 |
| | Days since last Paymt on: 06/14/2006 | | | | | | | | | |
| 29 | Eff Dt: 07/13/2006 | | Batch: 0713ACHS | | | IPT Dt: 7/01/06 | | | | 140.00 11 |
| | S/F MA  REF# | | | | | | | | | |
| 45 | 7/13/06 1407 Speed Draft Fee | 8/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | S/F C  REF# | | | | | | | | | |
| 46 | 7/23/06 1840 COUNTY TAX ADVANCE | 8/06 | 448000.00 | 10515.19 | 10515.19 | .00 | | .00 10515.19 | .00 | |
| | S/F SC  REF# | | | | | | | | | |

Exh.21 pg6

* For Internal USE ONLY, NOT a Transaction History *
* For Internal USE ONLY, NOT a Transaction History *

TRN497CR-02                                    HOMECOMINGS FINANCIAL                              5/21/07 14:19:19
MPRICE                                       DETAIL TRANSACTION HISTORY                        JOB DT: 5/01/07
                                                                                                      PAGE:    3

| ---TRANSACTION--- | | | NEXT | -AFTER TRANS.BALANCES- | | TOTAL | ------------APPLIED------------ | | | | | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NBR DATE CODE | DESCRIPTION | | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE | CD | &SRV.FEES |
| LOAN# | ██████937 | CONTINUED | | | | | | | | | | |
| 47  7/25/06  6040 COUNTY TAX  DISBURSED | | | 8/06 | 448080.00 | .00 | 10515.19- | .00 | .00 | 10515.19- | .00 | | |
| PAYEE FAFARUT 00006006647 DUE 11/25/05 | | | | | | | | | | | | |
| S/F SC  REF# 0006006647 | | | | | | | | | | | | |
| 48  7/25/06  1940 COUNTY TAX  ADVANCE | | | 8/06 | 448000.00 | 5.00 | 5.00 | .00 | .00 | 5.00 | .00 | | |
| S/F SC  REF# | | | | | | | | | | | | |
| 49  7/25/06  6040 COUNTY TAX  DISBURSED | | | 8/06 | 448000.00 | .00 | 5.00- | .00 | .00 | 5.00- | .00 | | |
| PAYEE 4041094 00006007813 DUE 11/25/05 | | | | | | | | | | | | |
| S/F SC  REF# 0006007813 | | | | | | | | | | | | |
| 50  8/11/06  1499 Late Charge | | | 8/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | | 137.20 01 |
| S/F  REF# | | | | | | | | | | | | |
| 51  8/17/06  1499 Speed Draft Fee | | | 8/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| S/F  REF# | | | | | | | | | | | | |
| 52  8/17/06  02 PAYMENT | | | 9/06 | 448000.00 | .00 | 2423.87 | .00 | 2286.67 | .00 | .00 | | 137.20 01 |
| Days since last Paymt on: 07/13/2006 | | | 34 | Eff Dt: 08/16/2006 | | Batch: 0817ACH9 | IPT Dt: 8/01/06 | | | | | |
| | | | | | | | | | | | | 100.00 11 |
| S/F BA  REF# | | | | | | | | | | | | |
| 53  8/17/06  1407 Speed Draft Fee | | | 9/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| Effective date: 8/16/06 | | | | | | | | | | | | |
| S/F C  REF# | | | | | | | | | | | | |
| 54  9/11/06  1499 Late Charge | | | 9/06 | 448000.00 | .00 | 137.20 | .00 | .00 | .00 | .00 | | 137.20 01 |
| S/F  REF# | | | | | | | | | | | | |
| 55  9/14/06  1499 Speed Draft Fee | | | 9/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| S/F  REF# | | | | | | | | | | | | |
| 56  9/14/06  0283 PAYMENT | | | 10/06 | 448000.00 | 1114.90 | 3401.57 | .00 | 2286.67 | 1114.90 | .00 | | 100.00 11 |
| Days since last Paymt on: 08/16/2006 | | | 29 | Eff Dt: 09/14/2006 | | Batch: 0914ACH2 | IPT Dt: 9/01/06 | | | | | |
| S/F BA  REF# | | | | | | | | | | | | |
| 57  9/14/06  1919 RECOVER ESCROW ADVANCE | | | 10/06 | 448000.00 | .00 | 1114.90- | .00 | .00 | 1114.90- | .00 | | |
| S/F BA  REF# | | | | | | | | | | | | |
| 58  9/14/06  1407 Speed Draft Fee | | | 10/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| S/F C  REF# | | | | | | | | | | | | |
| 59  9/25/06  1931 HAZARD INS  ADVANCE | | | 10/06 | 448000.00 | 6650.70 | 6650.70 | .00 | .00 | 6650.70 | .00 | | |
| S/F SC  REF# | | | | | | | | | | | | |
| 60  9/25/06  6031 HAZARD INS  DISBURSED | | | 10/06 | 448000.00 | .00 | 6650.70- | .00 | .00 | 6650.70- | .00 | | |
| PAYEE 3116032 00006099959 DUE 7/06/06 | | | | | | | | | | | | |
| S/F SC  REF# 0006099959 | | | | | | | | | | | | |
| 61  10/11/06  1499 Speed Draft Fee | | | 10/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| S/F  REF# | | | | | | | | | | | | |
| 62  10/11/06  02 PAYMENT | | | 11/06 | 448000.00 | 1114.90 | 3401.57 | .00 | 2286.67 | 1114.90 | .00 | | 100.00 11 |
| Days since last Paymt on: 09/14/2006 | | | 27 | Eff Dt: 10/11/2006 | | Batch: 1011ACH5 | IPT Dt: 10/01/06 | | | | | |
| S/F BA  REF# | | | | | | | | | | | | |
| 63  10/11/06  1919 RECOVER ESCROW ADVANCE | | | 11/06 | 448000.00 | .00 | 1114.90- | .00 | .00 | 1114.90- | .00 | | |
| S/F BA  REF# | | | | | | | | | | | | |
| 64  10/11/06  1407 Speed Draft Fee | | | 11/06 | 448000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | | 8.99 07 |
| S/F C  REF# | | | | | | | | | | | | |
| 65  11/02/06  1940 COUNTY TAX  ADVANCE | | | 11/06 | 448000.00 | 9620.81 | 9620.81 | .00 | .00 | 9620.81 | .00 | | |
| S/F SC  REF# | | | | | | | | | | | | |
| 66  11/02/06  6040 COUNTY TAX  DISBURSED | | | 11/06 | 448000.00 | .00 | 9620.81- | .00 | .00 | 9620.81- | .00 | | |
| PAYEE 4041094 00006163159 DUE 11/25/06 | | | | | | | | | | | | |
| S/F SC  REF# 0006163159 | | | | | | | | | | | | |

*Exh. 22*

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

July 20, 2010

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI, FL  33167

Re:

|  |  |
|---|---|
| Loan Number: |  |
| Mortgage Servicer | GMAC MORTGAGE, LLC |
| Creditor to whom the debt is owed: | U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 |
| Property Address: | 15020 SOUTH RIVER DRIVE, MIAMI, FL  33167 |
| Our File No.: | F10051160 |

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 with regards to its interests in the promissory Note and Mortgage executed by LEROY WILLIAMS  on June 30, 2005.  Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $661,289.01, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage.   Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage.   Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid.  If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed,

FILE_NUMBER: F10051160

HELLOLETTER

CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

## AFFIDAVIT

Exh. 23 pg. 1

I Maurice Symonette Heard The Judge Valerie Manno Schurr Saying in a Court Hearing after she was on the phone in a Zoom call I don't believe you guys signed my name for me. I don't believe that!, I never signed that!

**MAURICE SYMONETTE**
**15020 S. RIVER DR.**
**MIAMI FL. 33167**

X _Tammie Mitchell_
8, 9, 2022

## AFFIDAVIT

Exh. 23 pg. 2

**I JAMES BUCKMAN Heard The Judge Valerie Manno Schurr Saying in a Court Hearing after she was on the phone in a Zoom call I don't believe you guys signed my name for me. I don't believe that!, I never signed that!**



JAMES BUCKMAN
15020 S. RIVER DR.
MIAMI FL. 33167

X _____
8, 9, 2022

file:///Users/micanielnichloson/Downloads/IMG_2848.PN

Exh. 22





WSJ   The Wall Street Journal



**131 Federal Judges Broke the Law by Hearing Cases Where They Had a ...**

Images may be subject to copyright. Learn More

Visit >







RBK

131 Federal Judges Broke ...

Exh. 23

7:09

**dbr DAILY BUSINESS REVIEW**



Peter M. Weinstein, Chief Judge of the 17th Judicial Circuit Court in Florida. (J. Albert Diaz).

# Rules Change After Lawyer Accused of Forging Judge's Signatures 114 Times

The Broward clerk's office changed procedures for handling documents signed by judges after a Miami attorney was accused of forging judges' signatures 114 times.

February 25, 2016 at 12:00 AM

🕐 1 minute read

By Samantha Joseph | Updated on February 25, 2016

B04.24

**FindLaw**
(https://www.findlaw.com)

Find a Lawyer (https://lawyers.findlaw.com)

Enter legal issue and location

Legal Forms & Services ∨

Learn About the Law ∨

Legal Professionals ∨

Blogs(https://www.findlaw.com/legalblogs)

🔍 My legal issue

∨

I need help near (city, ZIP code or county)

Miami, Florida

FIND MY LAWYER >

FINDLAW (HTTPS://WWW.FINDLAW.COM) / BLOGS (HTTPS://WWW.FINDLAW.COM/LEGALBLOGS/) /
PRACTICE OF LAW (HTTPS://WWW.FINDLAW.COM/LEGALBLOGS/PRACTICE-OF-LAW/) /
GREEDY ASSOCIATES (HTTPS://WWW.FINDLAW.COM/LEGALBLOGS/GREEDY-ASSOCIATES/) / ATTORNEY ACCUSED OF FORGING JUDGES' SIGNATURES -- 114 TIMES

# Attorney Accused of Forging Judges' Signatures -- 114 Times

**Never miss a beat.**

Get FindLaw email updates in your inbox.

Enter your email address:

[                    ] SUBSCRIBE

Learn more (https://newsletters.findlaw.com) about FindLaw's newsletters, including our terms of us and privacy policy.



By Casey C. Sullivan, Esq. (https://www.findlaw.com/company/our-team.html) | Last updated on March 21, 2019

An attorney in Florida is facing accusations that he forged judges' signatures -- not once, not twice, but more than a hundred times. José Manuel Camacho is facing 14 counts of forgery (http://www.abajournal.com/news/article/lawyer_is_accused_of_forging_judges_signatures_on_more_than_100_documents/) for allegedly copying seven different judges' John Handcock's a total of *114 times*. Camacho wasn't just forging small beans documents, either: these were structured settlement deals which, under Florida law, required judicial approval.

We can't tell what is more shocking: the fact that Camacho had the (alleged) gall to engage in such prolific forgery (https://www.findlaw.com/criminal/criminal-charges/forgery.html), or that no one caught on until he had done it so many times.

## That Doesn't Look Like My Signature...

Camacho's forgeries were discovered when Broward County Judges Marina Garcia-Wood and Carlos Rodriguez discovered their signatures on legal documents filed with the court and noticed something ... off. Not only had they not approved the settlements, they had not signed the filed documents. The judges complained, opening up an investigation that unearthed the massive amount of forgeries.

It's not just the amount of forgeries that is disturbing, either. Camacho, according to the *Sun Sentinel* (http://www.sun-sentinel.com/local/broward/fl-broward-judges-signatures-forged-20160222-story.html), was forging judges' approval of structured settlement agreements, in which those expecting damages payouts over time would transfer their rights in exchange for a smaller lump sum payment. In Florida, those agreements require judicial approval to make sure that they are fair. Because of Camacho's alleged forgeries, 114 such agreements were never reviewed.