UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22640-CIV-MARTINEZ

MACK WELLS and
MAURICE SYMONETTE,

       Plaintiffs,

v.

US BANK, NATIONAL
ASSOCIATION, *et al.*,

       Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court on Defendant Miami-Dade County Clerk of Court and Comptroller's Motion to Lift the Stay [ECF No. 81][1] and three Motions to Dismiss. The first Motion to Dismiss [ECF No. 30] was filed by Defendant Juan Fernandez-Barquin, Clerk of the Court of the Eleventh Judicial Circuit and Comptroller of Miami-Dade County, Florida ("Clerk's Motion"). The second [ECF No. 31] was filed by the State Defendants ("State Defendants' Motion").[2] The third [ECF No. 36] was filed by Defendant U.S. Bank, N.A. as Trustee for RASC 2005AHL3 and Mortgage Electronic Registration Systems, Inc. ("Private Defendants' Motion").[3] Plaintiffs, proceeding *pro se*, failed to timely respond to the Motions.[4]

---

[1] Defendants U.S. Bank, N.A. as Trustee for RASC 2005AHL3 and Mortgage Electronic Registration Systems, Inc. ("Private Defendants") joined the Clerk's Motion to Lift the Stay [ECF No. 81]. (*See* [ECF No. 82]).

[2] The State Defendants are Judge Bronwyn Miller, Judge Edwin Scales, Judge Miguel de la O, Judge Valerie Manno Schurr, Judge Samantha Cohen, Judge Carlos Lopez, Judge Jennifer Bailey, and Judge Vivianne Del Rio.

[3] The Private Defendants also filed a Motion to Deem Motion to Dismiss . . . Timely Filed [ECF No. 37].

[4] Plaintiffs attempted to respond to the Motions on April 26, 2024—over three months after the January 16, 2024 and January 19, 2024 deadlines, (*see* [ECF Nos. 30, 31]), and over two months after the February 9, 2024 deadline, (*see* [ECF No. 36]). Plaintiffs never requested or showed good cause justifying extensions of the response deadlines. *See* S.D. Fla. Loc. R. 7.1(c)(1) ("[E]ach party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service . . . . Failure to do so may be deemed sufficient cause for granting the motion by default. . . . No further or additional memoranda of law shall be filed and served without prior leave of Court.").

Nevertheless, the Court has reviewed the Motions; Plaintiffs' untimely Response [ECF No. 39]; Defendants' Replies [ECF Nos. 44, 45]; and the record and is otherwise fully advised. After careful consideration, the Motions to Dismiss are **GRANTED**. Plaintiffs' Corrected Amended Complaint[5] is **DISMISSED**.

## I.    INTRODUCTION

The instant suit is not Plaintiffs' first attempt at seeking federal court review of a state foreclosure action, but Plaintiffs' nineteen-year string of litigation continues before this Court. Plaintiffs filed the instant lawsuit against state circuit and appellate judges, county officials, various banks, and title and/or mortgage companies, and Plaintiffs' claims arise from state foreclosure proceedings involving real property in Miami, Florida. However, the Complaint is unintelligible and fails to state a claim over which the Court has subject matter jurisdiction and upon which relief can be granted. The several reasons are explained below.

---

Further, except the first page, the entirety of Plaintiffs' Response to the Motions [ECF No. 40] appears to come from a separate document having nothing to do with the Motions and containing zero argument as to why the Motions should not be granted. Plaintiffs never attempted to strike or refile the Response. However, upon further review, it appears the first page of Plaintiffs' Response to the Motions [ECF No. 40] and the first page of Plaintiffs' "Emergency Motion to Void Foreclosure Sale" [ECF No. 39] are swapped. Thus, apart from the first page, Plaintiffs' Response to the Motions is found at ECF No. 39.

To add to the confusion, Plaintiffs' Response—like the document filed in its place—violates Local Rule 7.1(c)(2), which states: "Absent prior permission of the Court, neither a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages; a reply memorandum shall not exceed ten (10) pages." S.D. Fla. Loc. R. 7.1(c)(2). Plaintiff's Response spans ninety-four pages.

[5] Three versions of the Complaint appear on the docket for this case, and it is unclear which version is operative. (*See* [ECF No. 1] ("Complaint"); [ECF No. 6] ("Amended Complaint"); [ECF No. 16] ("Corrected Amended Complaint")). This is apparent in the Motions to Dismiss, as the Clerk's Motion [ECF No. 30] moves to dismiss the Amended Complaint; the State Defendants' Motion [ECF No. 31] moves to dismiss the Complaint *and* the Amended Complaint; and the Private Defendants' Motion [ECF No. 36] moves to dismiss the Corrected Amended Complaint. Although Plaintiffs made some changes from one version to the next, none of these changes alter the Court's analysis. For the sake of clarity, however, the Court will consider the most recent pleading, the Corrected Amended Complaint [ECF No. 16], to be the operative pleading, and any references in this Order will be to the Corrected Amended Complaint.

## II.   BACKGROUND

Plaintiffs' claims arise from a decades-long dispute concerning state foreclosure proceedings for the real property located at 15020 South River Drive, Miami, Florida 33167 (the "Property"). *See U S Bank (na) v. Williams*, Case No. 2010-61928-CA-01 (Fla. 11th Cir. Ct.).[6] After prolonged litigation where Plaintiffs and their compatriots repeatedly stymied the sale of the Property by filing for bankruptcy on the eve of the scheduled sale, the Property was finally sold on October 16, 2023. In their lengthy Corrected Amended Complaint [ECF No. 16], Plaintiffs allege a conspiracy of bribery and corruption among banks, financial institutions, Miami-Dade County officials, and members of the Florida judiciary to steal Plaintiffs' Property. As best as the Court can decipher, Plaintiffs allege, *inter alia*, that Defendants wrongfully foreclosed on their Property, violated the Fair Debt Collection Practices Act and Real Estate Settlement Procedures Act, committed fraud, took bribes, and discriminated against Plaintiffs based on race, religion, and ability. (*See generally* Am. Compl.). Plaintiffs seek a declaratory judgment, injunctive and equitable relief, and compensatory, special, general, and punitive damages. (*See id.* at 103, 107).

Defendants moved to dismiss the Corrected Amended Complaint in its entirety, arguing, *inter alia*, that (1) the Corrected Amended Complaint is an impermissible shotgun pleading, (*see* Clerk's Motion 11–14; State Defendants' Motion 5–6; Private Defendants' Motion 10–12); (2) certain Defendants are immune, (*see* State Defendants' Motion 7–10; Clerk's Reply [ECF No.

---

[6] Pursuant to Federal Rule of Evidence 201(d), a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Under this rule, federal courts may take judicial notice of court records because those records can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Paez v. Sec'y. Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020). Additionally, federal courts may take judicial notice of court dockets and the filings therein when deciding a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *See Universal Express Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006). Accordingly, the Court grants Defendant Clerk's request that the Court take judicial notice of the 2007 State Court Case, *U.S. Bank v. Williams*, No. 2007-012407-CA-01 (Fla. 11th Cir. Ct. Apr. 26, 2007), the 2010 State Court Case, *U.S. Bank v. Williams*, No. 2010-061928-CA-01 (Fla. 11th Cir. Ct. Dec. 6, 2010), and the contents of both court files. (*See* Clerk's Motion 2 n.2).

44] 5–6); and (3) the Court lacks subject matter jurisdiction to hear the case, (*see* Clerk's Motion 6–11; State Defendants' Motion 10–14; Private Defendants' Motion 14–19).

While the Motions to Dismiss were pending, Plaintiffs filed a lawsuit in state court against the undersigned, Magistrate Judge Sanchez, and others. *See Wells et al. v. U.S. Bank N.A., et al.*, Case No. 2024-012330-CA-01 (Fla. 11th Cir. Ct.). That action was removed to federal court, *Wells et al. v. U.S. Bank N.A. et al.*, No. 24-23015-CIV, Notice of Removal [ECF No. 1], filed August 8, 2024 (S.D. Fla. 2025), and the Court stayed this case during the pendency of those proceedings, (*see* Order Staying Case [ECF No. 79]). The court later dismissed that action, and the Eleventh Circuit dismissed Plaintiffs' subsequent appeal. *See Wells et al. v. U.S. Bank N.A. et al.*, No. 24-23015-CIV, Order Granting Motions to Dismiss [ECF No. 26], filed October 4, 2024 (S.D. Fla. 2025); *Wells et al. v. U.S. Bank N.A. et al.*, No. 24-23015-CIV, Order of Dismissal from USCA [ECF No. 37], filed May 29, 2025 (S.D. Fla. 2025).

## III.    LEGAL STANDARD

A "district court has unquestionable authority to control its own docket and broad discretion in deciding how best to manage the cases before it . . . ." *Guice v. Sec'y, Dep't of Labor*, 754 F. App'x 789, 791 (11th Cir. 2018) (citing *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014)). And while the Court construes *pro se* pleadings liberally, *Lacy v. BP P.L.C.*, 723 F. App'x 713, 715 (11th Cir. 2018), liberal construction of such pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted).

To survive dismissal, a pleading must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he question is whether

the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration adopted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Moreover, federal courts are courts of limited jurisdiction. *See, e.g., S. Fla. Equitable Fund, LLC v. City of Miami, Fla.*, 770 F. Supp. 2d 1269, 1277 (S.D. Fla. 2011). Consequently, federal courts may adjudicate cases only as permitted by the Constitution and where they have received a statutory grant of authority to adjudicate. *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

## IV.   DISCUSSION

Plaintiffs' Corrected Amended Complaint [ECF No. 16] is riddled with deficiencies, and Defendants assert several bases for dismissal. The Court need only focus on three: jurisdiction, immunity, and shotgun pleadings.

### A.   Subject Matter Jurisdiction

The Court begins with the threshold issue of jurisdiction. "Federal courts have limited subject-matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists." *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300 (S.D. Fla. 2016) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam)). A

district court must examine the basis of its subject matter jurisdiction at any stage of the proceedings when its existence is in doubt, whether the issue is raised by the parties or *sua sponte*. *See Makro Capital of Am., Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1345 (S.D. Fla. 2006). The Court may hear a case only if it has "at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id.* If, at any time, the Court determines it lacks subject matter jurisdiction, it "must dismiss the case." Fed. R. Civ. P. 12(h)(3).

Defendants may attack subject matter jurisdiction in two different ways—via a facial attack on the complaint alone or via a factual attack on all facts presented in the case. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980). "A 'facial attack' on the complaint requires the court merely to look and see [whether the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Id.* at 511 (citations omitted). When the attack is factual, however, the Court can consider more than it could have on a motion to dismiss under Rule 12(b)(6) or even on a motion for summary judgment under Rule 56. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). When considering factual attacks,

> the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981)). Here the attack is factual, so the Court is free to weigh the available evidence, such as state-court proceedings. *See Cave v. Stone*, Case No. 20-61955-CIV-ALTMAN, 2021 WL 4427451, at *1 (S.D. Fla. Sept. 27, 2021) (considering multiple civil and criminal state-court documents when analyzing subject matter jurisdiction on a motion under Rule 12(b)(1)).

### 1. Jurisdiction Over Plaintiffs' State Law Claims

Plaintiffs appear to bring several claims arising under state law and attempt to invoke the Court's diversity jurisdiction. (*See* Am. Compl. 14–15 ("Plaintiff lives in the State of Florida[,] and the Defendants/Respondents are citizens of Minnesota[,] Minneapolis, 800 Nicollet Mall 55402 - and Florida. So therefore we have adiversity [sic] of Jurisdictions [sic] which is Federal.")). Thus, the Court turns to the relevant jurisdictional statute.

Diversity jurisdiction is governed by 28 U.S.C. § 1332(a)(1), which confers upon federal courts jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between . . . citizens of different States." This statute and its predecessors consistently have been held to require complete diversity of citizenship. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In other words, diversity jurisdiction exists only where *each* defendant is a citizen of a different State from *each* plaintiff. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

Plaintiffs fail to satisfy the complete diversity requirement. First, in the Corrected Amended Complaint, Plaintiffs concede that they are citizens of the same state as defendants. Specifically, Plaintiffs allege, "*Plaintiff lives in the State of Florida* and the Defendants/Respondents are citizens of Minnesota Minneapolis, 800 Nicollet Mall 55402 - *and Florida*." (Am. Compl. 14 (emphasis added)). Because complete diversity is required for a federal court to have diversity jurisdiction and Plaintiff and at least some Defendants are citizens of Florida, complete diversity does not exist. Second, Plaintiffs allege only that they are Florida residents—not that they are Florida citizens. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) (per curiam) (holding that an allegation of residency alone "does not satisfy the requirement of an allegation of citizenship"). Third, and perhaps most confusingly, Plaintiffs

fail to allege the individual citizenship of each Defendant, instead grouping the Defendants together and stating they are "citizens of Minnesota[,] Minneapolis . . . and Florida." (Am. Compl. 14). This is especially unclear given that Plaintiffs are asserting claims against over twenty Defendants in this lawsuit, including natural persons, limited liability corporations, government officials, and other entities. Because the Court cannot determine that diversity jurisdiction exists without this missing jurisdictional information, to the extent Plaintiffs assert claims under state law, the Corrected Amended Complaint is dismissed.

## 2. Jurisdiction Over Plaintiffs' Remaining Claims

Moreover, even had Plaintiffs adequately alleged the Court's jurisdiction—and to the extent Plaintiffs attempt to bring claims under federal law—the *Rooker-Feldman* doctrine bars Plaintiffs' claims, requiring dismissal.

The *Rooker-Feldman* doctrine, derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation[,]" *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). The doctrine precludes district courts "from exercising appellate jurisdiction over final state-court judgments," *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009), and applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The task of reviewing a state court final judgment is *"reserved for state appellate courts*, or as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "The doctrine extends not only to constitutional claims presented or

adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment . . . or it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Casale*, 558 F.3d at 1260.

Here, Plaintiffs' claims are, without question, inextricably intertwined with the state court's final judgment of foreclosure. The causes of action set forth in the Corrected Amended Complaint and all the underlying allegations stem from Plaintiffs' contention that the state foreclosure judgment was improper due to the alleged fraudulent scheme involving the Defendants in this case. (*See generally* Am. Compl.). Plaintiffs' clear attempt to attack the state court's final ruling is evident by reference to the prayer for relief in the Corrected Amended Complaint, where Plaintiffs ask the Court to "close this case" with the original dismissal with prejudice in the 2007 State Court Case—*i.e.*, asking the Court to invalidate the entire 2010 State Court Case and overturn the final judgment of foreclosure. (*See id.* at 123).

This requested relief runs afoul of the *Rooker-Feldman* doctrine, as it invites the Court to reject the state court judgment. *See Exxon Mobil Corp.*, 544 U.S. at 284. In accepting Plaintiffs' allegations as true, the Court "would effectively declare the state court judgment fraudulently procured and thus void." *Figueroa v. Merscorp*, 766 F. Supp. 2d 1305, 1324 (S.D. Fla. 2011) (citation and quotation marks omitted). Plaintiffs' request for monetary relief does not change this result; "it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd* 446 F. App'x 360 (2d Cir. 2011). Accordingly, this suit is barred by the *Rooker-Feldman* doctrine.[7]

---

[7] This is not the first time Mr. Wells and/or Mr. Symonette have attempted to seek a federal court's review of a foreclosure action in Florida state court. *See, e.g., Symonette v. Deutsche Bank Nat'l Tr. Co.*, No. 19-cv-62132-MOORE, Order Dismissing Case [ECF No. 5] (S.D. Fla. Aug. 27, 2019) (dismissing Mr. Symonette's complaint challenging foreclosure action under *Rooker-Feldman* doctrine); *McNeal et al. v. U.S. Bank Nat'l Ass'n*, No. 19-

### B.      Clerk's Eleventh Amendment Immunity

The jurisdictional deficiencies continue. Defendant Clerk further argues that Plaintiffs' "claims against [him] must fail because, pursuant to the Eleventh Amendment, [he] is immune from suit in federal court." (Clerk's Reply 5).[8] The Court agrees.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment "largely shields states from suit in federal courts without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1275–76 (11th Cir. 2024); *see also Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013) (citing *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 252 (2011)) ("Though the Amendment's text appears to only withdraw federal jurisdiction from any private suit against a state by a noncitizen, the Supreme Court reads the Amendment to remove any doubt that the Constitution preserves

---

22503-CIV, Order Dismissing Case [ECF No. 8] (S.D. Fla. July 2, 2019) (dismissing Mr. Symonette's complaint seeking review of a foreclosure action as an impermissible shotgun pleading and under *Rooker-Feldman* doctrine); *Symonette et al. v. Indy Mac Bank et al.*, No. 18-23615-CIV-ALTONAGA, Order Dismissing and Closing Case [ECF No. 9] (S.D. Fla. Sept. 28, 2018) (dismissing Mr. Wells and Mr. Symonette's complaint challenging a foreclosure action as a rambling shotgun pleading); *Marin et al. v. Wash. Mutual Bank F.A.*, No. 17-22478-CIV-MORENO, Order Dismissing Case [ECF No. 8] (S.D. Fla. Aug. 14, 2017) (dismissing Mr. Symonette's complaint challenging a foreclosure action under *Rooker-Feldman* doctrine); *Ward et al. v. JP Morgan Chase Bank et al.*, No. 13-cv-60834, Order of Dismissal [ECF No. 5] (S.D. Fla. Apr. 11, 2013) (dismissing Mr. Symonette's complaint seeking an injunction of a pending foreclosure action under *Younger* abstention doctrine); *see also Williams et al. v. Am. Home Mortgage Servs. Inc. et al.*, No. 13-cv-23240, Final Order of Dismissal [ECF No. 8] (S.D. Fla. Dec. 10, 2013); *Wells et al. v. U.S. Bank, N.A.*, No. 24-cv-22532-RAR, Order of Dismissal [ECF No. 6] (S.D. Fla. July 8, 2024).

[8] The Court accepts the Clerk's argument despite having been raised for the first time in his reply. "[T]he Supreme Court has expressly noted that Eleventh Amendment immunity 'deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding.'" *Shedrick v. Dist. Bd. of Trs. Of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1359 (S.D. Fla. 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984)); *see also Gargett v. Fla. Dep't of Juv. Just.*, No. 8:19-CV-2051, 2024 WL 3470355, at *3 (M.D. Fla. July 19, 2024)) (finding department did not waive immunity by not raising Eleventh Amendment immunity in its answer or motion for summary judgment), *appeal dismissed*, No. 24-12546-FF, 2024 WL 5374663 (11th Cir. Nov. 19, 2024).

states' sovereign immunity in the federal courts."). "A motion to dismiss asserting the defense of Eleventh Amendment immunity presents a challenge to the court's subject matter jurisdiction." *Baker v. Univ. Med. Serv. Ass'n, Inc.*, No. 8:16-CV-2978-T-30MAP, 2016 WL 7385811, at *1 (M.D. Fla. Dec. 21, 2016).

"Moreover, the Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).[9] As such, "[t]he Eleventh Amendment applies not only to the state, but to a defendant who acts as an 'arm of the state.'" *Kicklighter v. McIntosh Cnty. Bd. of Comm'rs*, 694 F. App'x 711, 714 (2017) (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)).

The relevant inquiry here is whether the Clerk was acting as an arm of the state in his official capacity when he engaged in the behaviors Plaintiffs allege, including interfering with bankruptcy filings, (*see* Am. Compl. 3), and appointing Judges with ethical conflicts, (*see id.* at 75). But Plaintiffs expressly answer this question in the affirmative by stating in their Jurisdictional Memorandum that they "see[k] redress of certain state actors below for their conduct in the[ir] *official capacities as employees or arms of the State of Florida.*" ([ECF No. 8] 2 (emphasis added)). Moreover, courts in this Circuit have found Florida Clerks of Court to be arms of the state entitled to Eleventh Amendment immunity. *See Pasek v. Kinzel*, 566 F. Supp. 3d 1307, 1317–18 (M.D. Fla. Oct. 14, 2021) (holding that the Collier County Clerk of the Circuit Court and

---

[9] The Supreme Court has recognized only two exceptions to a state's Eleventh Amendment immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). "[E]ither (1) Congress can abrogate sovereign immunity by enacting legislation to enforce the substantive provisions of the Fourteenth Amendment, or (2) a state can waive its sovereign immunity." *Stroud*, 722 F.3d at 1298. Neither exception applies here.

Additionally, under the *Ex Parte Young* doctrine, "the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000). However, nowhere in the Corrected Amended Complaint do Plaintiffs seek relief from future actions by the Clerk.

Comptroller is an arm of the state); *Courthouse News Serv. v. Forman*, 601 F. Supp. 3d 1236, 1242 (N.D. Fla. May 4, 2022) ("Applying *Manders*, several courts have determined that Florida circuit court clerks are arms of the state."). This determination also accords with the Florida Constitution. *See, e.g.*, Fla. Const. Art. V, § 14(b)–(c) (providing that "[a]ll funding for the offices of the clerks of the circuit" shall come from filing fees or supplemental state funding, and that with few exceptions inapplicable here, "[n]o county or municipality . . . shall be required to provide any funding for . . . the offices of the clerks of the circuit and county courts performing court-related functions."). Accordingly, the Defendant Clerk is entitled to Eleventh Amendment immunity from suit, and his Motion to Dismiss is granted.

### C.     State Defendants' Eleventh Amendment Immunity

The State Defendants are likewise entitled to Eleventh Amendment immunity.[10] The State Defendants argue "they were acting in their official capacities," and thus, "each judge should be entitled to sovereign immunity under the Eleventh Amendment." (State Defendants' Motion 9). Indeed, the State Defendants are all members of the judicial branch of the State of Florida, which was established by Article V, Section 5 of the Florida Constitution and is a state agency for Eleventh Amendment purposes. *See Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) (holding that "[t]he Eleventh Amendment prohibits actions against state courts"); *McBrearty v. Koji*, 348 F. App'x 437, 440 (11th Cir. 2009) (applying Eleventh Amendment immunity to a Florida District Court of Appeals); *Jallali v. Fla.*, No. 09-61900-CIV, 2010 WL 1856173, at *2 (S.D. Fla. May 7, 2010) (same), *aff'd*, 404 F. App'x 455 (11th Cir. 2010).

---

[10] Four judicial Defendants did not join in the State Defendants' Motion. However, the Court's analysis as to the State Defendants applies with equal force to Defendants Judge Shurr, Judge Schlesinger, Judge De La O, Judge Cohein, Judge Diaz, Judge Del Rio, Judge Miller, Judge Emas, Judge Scales, Judge Lopez, and Judge Bailey.

Here, as with the Clerk, Plaintiffs seek redress from the State Defendants "for their conduct in the[ir] official capacities as employees or arms of the State of Florida." ([ECF No. 8] 2). The Corrected Amended Complaint also takes issue with "conduct of the Defendants in how the final [judgment] of foreclosure was procured," and only the State Defendants made judgments of foreclosure. (*Id.* at 6–7). Plaintiffs have not demonstrated nor even argued that Congress abrogated the State Defendants' Eleventh Amendment immunity or that the State Defendants gave their consent to be sued, and the Court finds neither to be the case.

### D. State Defendants' Judicial Immunity[11]

Moreover, the State Defendants are entitled to judicial immunity. "A district court may dismiss a complaint for failure to state a claim based upon the affirmative defense of judicial immunity when the defense is an obvious bar given the allegations." *Knezevich v. Ptomey*, 761 F. App'x 904, 907 (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005)). The Supreme Court has long recognized the well-established principle of judicial immunity: "Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction[] and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. 335, 351 (1871). The only exception to this immunity exists when a judge acts in "*clear* absence of all jurisdiction over the subject-matter." *Id.* (emphasis added); *see also Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (stating the scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge).

---

[11] Beyond the issue of immunity, Plaintiffs lack standing to bring their claims against these members of the judiciary. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressability."). It is unclear what injury the Plaintiffs may have suffered at the hands of these Defendants, but an adverse ruling by a judge in a foreclosure matter does not create a justiciable controversy or make the judge liable for a loss a litigant may have suffered. Plaintiffs fail to make out any adequate claims that are traceable to or redressable by these Defendants. Accordingly, Plaintiffs present no justiciable controversy for this Court to resolve.

RICO allegations made against the judiciary are likewise subject to judicial immunity. *See Marlett v. Marlett*, No. 11-cv-959-J-37, 2012 WL 13136736, \*11 (Fla. M.D. Feb. 7, 2012); *Hollis-Arrington v. PHH Mort. Corp.*, 205 F. App'x 48, 52–53 (3rd Cir. 2006) (holding judicial immunity barred homeowners' RICO case against judicial defendants for making rulings unfavorable to homeowner where allegations all involved acts performed by the judges within scope of their judicial duties); *Sisk v. U.S.*, No. 06-2396, 2007 WL 1963000 at \* 3 (W.D. La. June 4, 2007) ("[A] judicial act does not become less judicial by virtue of an allegation of malice, corruption, or conspiracy. . . . Neither does the fact that a RICO violation is alleged change the fact of judicial immunity."); *Davit v. Davit*, 173 F. App'x 515, 518 (7th Cir. 2006) (holding former husband who brought RICO action against state court judges involved in his divorce proceeding could not circumvent the judicial immunity doctrine by raising a RICO claim).

Here, the State Defendants are all Florida state-court judges, and it is undisputed that Plaintiffs' allegations against the State Defendants are based on the State Defendants acting in their judicial capacity. (*See, e.g.*, Am. Compl. 71, 73 (demanding Judge Miller and Judge Scales recuse themselves and vacate their orders); *id.* at 55–56 (alleging Judge De La O has a conflict of interest with U.S. Bank, and because he has ruled in favor of U.S. Bank, he "must be [a]rrested and overturned or [r]ecuse HIMSELF and VACATE HIS ORDERS against [] us"); *id.* at 39 (alleging Judge Schurr "with her millions of dollars [in] [c]onflicts of [i]nterest helped US Bank by not ever [d]efaulting them no matter what the laws and rules say"); *id.* at 18 (alleging Judge Del Rio, Judge Cohen, and Judge De La O "didn't answer our Motion to Recuse themselves within 30 days after it was filed making their Orders Void and all the other Judges Orders after theirs Void"); *id.* at 63–64 (alleging Judge Lopez "got" over \$2.5 million from U.S. Bank and "gave a sale date very quickly" and alleging Judge Lopez "[told] us [t]hat he was g[o]ing to give us a [h]earing date

14

before the Foreclosure Sale to just give our house away to these evil [c]annibal [w]erewolf attorneys[.]")). Ruling on motions, scheduling hearing dates, and recusing from cases are unequivocally acts made in a judicial capacity. And Plaintiffs have raised no argument that the State Defendants acted in excess of their jurisdiction, let alone "acted in the clear absence of all jurisdiction." *Bolin*, 225 F.3d at 1234 (internal quotations omitted).

Accordingly, the State Defendants are immune from suit based on Eleventh Amendment immunity, judicial immunity, or both. Plaintiffs provide no basis for the Court to pierce this immunity. Thus, the State Defendants' Motion to Dismiss is granted.

### E.    Shotgun Pleading

Beyond these jurisdictional deficiencies, the Corrected Amended Complaint is a shotgun pleading. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading include a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).[12] The Rule further requires that a complaint "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Rule 10(b) provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading makes it "virtually impossible to know which

---

[12] Given that Plaintiffs raise allegations of fraud, Plaintiffs should be held to the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). However, the Corrected Amended Complaint does not meet the pleading requirements of Rule 8(a) and thus also fails to meet the heightened requirements of Rule 9(b).

15

allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Courts in the Eleventh Circuit have little tolerance for such pleadings. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). In fact, the Eleventh Circuit has expressed increased frustration with district courts allowing cases to proceed despite shotgun pleadings, which "harm the court by impeding its ability to administer justice." *See Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001).

This is not Plaintiffs' first time filing a shotgun pleading. In a previous lawsuit brought in this District, the court dismissed pleadings by the same Plaintiffs twice, both times on shotgun pleading grounds, and stated: "Like with the . . . prior complaint, these . . . claims are just pages of run-on sentences and paragraphs that are cumbersome and impossible to understand. No defendant could read them and understand the claim being brought against it." *See Symonette et al. v. US Bank Nat'l Ass'n et al.*, No. 23-cv-61804, Order Dismissing [ECF No. 16] 2–3 (S.D. Fla. Dec. 19, 2023); *see also Wells et al. v. U.S. Bank, N.A.*, No. 24-cv-22532-RAR, Order of Dismissal [ECF No. 6] 3 (S.D. Fla. July 8, 2024) (dismissing previous complaint by same Plaintiffs: "Given this filing's unintelligible incoherence, the Court is unable to determine what relief Plaintiffs actually seek. This infirmity alone provides grounds for dismissal.").

The same is true here. The Corrected Amended Complaint is a disjointed and procedurally flawed fourteen-count, 125-page-long pleading (with over 300 pages of attachments) riddled with allegations that the Court finds entirely unintelligible and incoherent. And fatally, because of these deficiencies, the pleading fails to provide Defendants with adequate notice of the claims against them and the grounds upon which each claim rests.

First, the Corrected Amended Complaint includes counts adopting the allegations of all preceding counts. (*See, e.g.*, Am. Compl. 103 (incorporating, for the ninth cause of action, "all

16

paragraphs inclusive, herein, as though set forth herein")). Moreover, the Corrected Amended Complaint contains multiple counts that include verbatim "facts" from previous counts. (*Compare, e.g.*, Am. Compl. 34, *with id.* at 88 (identical text discussing evidence authentication)).

Second, the Corrected Amended Complaint is filled with conclusory, vague, and immaterial "facts." (*See, e.g., id.* at 37, 39, 43 (citing Bible verses and alleging that their opponents break all the laws, kill Black people, and steal Black people's homes); *id.* at 52 (alleging Wachovia Bank admitted it was a "SLAVE MASTER[] OF BLACK PEOPLE"); *id.* at 61 (discussing whether the court reporter could hear Plaintiffs during a hearing); *id.* at 77 (contesting the legal sufficiency of a search warrant)).

Third, Plaintiffs' supposed "causes of action" do not relate to the facts alleged and, in some cases, are not directed at any named Defendants. (*See, e.g., id.* at 27, 90 (first cause of action seeking to quiet a title against nonparty Fannie Mae, and fifth cause of action seeking to quiet title against nonparties Fannie Mae, the SEC, and the Treasury Department); *id.* at 37–38, 78, 90, 98, 106, 108, 113 (naming no defendant in the second, fourth, fifth, seventh, tenth, eleventh, or twelfth cause of action); *id.* at 45 (third cause of action claiming—in one count—violations of the Federal Rules of Civil Procedure, Florida Rules of Civil Procedures, Florida Code of Judicial Conduct, Florida state statutes, and federal statutes); *id.* at 92, 103 (sixth and ninth cause of action against, *inter alia*, "THE OTHER ENTITIES")).

Fourth, Plaintiffs jumble together all their "facts," allegations, and parties throughout their Corrected Amended Complaint such that Defendants have no way of being on notice as to the claims against them. (*See, e.g., id.* at 38 ("HERE'S HOW THESE JUDGES PLAYED TAG TEAM AND AXIOMATIC CONSTUCIVE [sic] FRAUD TO CONSPIRE WITH EACH OTHER TO TAKE OUR HOMES BECAUSE U.S. BANK BRIBED THEM TO RULE AGAINST US."); *id.*

17

at 100 (stating cause of action against "the clerks" but then alleging "facts" concerning bankruptcy judges, judges' family members, and the BBC)).

Moreover, the Corrected Amended Complaint is written in a narrative format, contains multiple paragraphs that appear to be copied from other sources, repeats the same information in various places, and jumps from one topic to another without any sort of transition—all of which make it extremely difficult to understand. Further, apart from a handful of inconsistently numbered paragraphs, (*see, e.g.*, Am. Compl. 43–60), Plaintiffs fail to number their paragraphs as required under Rule 10(b). (*See generally id.*); *see also* Fed. R. Civ. P. 10(b). The Corrected Amended Complaint also fails to comply with Rule 10(b)'s requirement that plaintiffs state "each claim founded on a separate transaction or occurrence . . . in a separate count" if "doing so would promote clarity." Fed. R. Civ. P. 10(b). In this case, clarity is desperately needed.

To add to the confusion, many of Plaintiffs' "causes of action" do not actually exist. For example, Plaintiffs' eighth cause of action is labeled "BANKRUPTCY VIOLATION WHAT THECLERKS DID: INTERFERING WITH FILING BANKRUPTCY." (Am. Compl. 100). Likewise, Plaintiffs' fourteenth cause of action is labeled "THE CONSPIRING LAWYERS: NEVER BROUGHT IN NOTE, ALLONGE, MORTGAGE OR ASSIGNMENT BECAUSE THEY DON'T HAVE IT, IN VIOLATION OF FL. STAT. 702.015." (*Id.* at 119). The Court is stumped as to the possible meaning of these claims or their underlying bases, and the Court cannot do Plaintiffs' job for them. *See Williams v. Donald*, No. 1:08-cv-57, 2009 WL 2589595, at *4 (M.D. Ga. Aug. 19, 2009) ("[C]ourts are not required to aid [*pro se*] litigants in setting forth legally cognizable claims." (alterations added)); *see also Jones v. N.L.R.B.*, 675 F. App'x 923, 925 (11th Cir. 2017) ("While *pro se* briefs are generally held to a less stringent standard than those submitted by counsel, courts are not required to step into the role of *de facto* counsel." (citation omitted)).

18

Even liberally construing the Corrected Amended Complaint, *see Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008), the Court is unable to determine what Plaintiffs' exact claim or claims against the remaining Defendants may be. Whether taken line-by-line or viewed as a whole, Plaintiffs' allegations are nonsensical and completely lack merit in law and plausible fact. *See Guthrie v. U.S. Government*, 618 F. App'x 612, 617 (11th Cir. 2015) ("[I]mprobability tips into frivolity where the allegations are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." (alteration added; alteration adopted; quotation marks and citation omitted)). For this multitude of reasons, Plaintiffs' Corrected Amended Complaint is dismissed as to all Defendants.

## F. Dismissal Without Prejudice

Defendants urge that the Court's dismissal should be entered *with prejudice*. (*See* State Defendants' Motion 14; Private Defendants' Motion 19–20; Clerk's Reply 7).

With respect to Plaintiffs' claims against the Defendant Clerk and the State Defendants, "[b]ecause the dismissals were based on sovereign immunity grounds, the jurisdictional nature of the dismissal requires it to be entered without prejudice." *Dupree v. Owens*, 92 F.4th 999, 1008 (11th Cir. 2024) (vacating and remanding to require district court to expressly state that dismissal was without prejudice, even though such distinction is not required by Fed. R. Civ. P. 41(b)); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d at 1232 ("[S]ince the district court did not have subject matter jurisdiction in this case, [the plaintiff's] complaint should have been dismissed without prejudice.")).

Likewise, because the Court's analysis of Plaintiffs' shotgun pleading does not reach the merits, dismissal of Plaintiffs' claims against the Private Defendants also must be without prejudice. In *Vibe Micro v. Shabanets*, the Eleventh Circuit held that "[w]hen a litigant files a

shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." 878 F.3d at 1296. But the Eleventh Circuit "decide[d] and intimate[d] nothing about a party proceeding *pro se*." *Id.* at 1296 n.6 (internal quotation marks omitted). Here, Plaintiffs are proceeding *pro se* and have already amended their complaint—without Court approval—twice. (*See* [ECF Nos. 6, 16]).

District courts have "extensive discretion" in deciding whether to grant a plaintiff leave to amend. *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). Leave to amend need not be given "when the amendment would prejudice the defendant, follows undue delays, or is futile." *Id.* (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). And leave to amend a complaint is futile when the proposed amended complaint still would be subject to dismissal. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). This action appears to be based wholly on dissatisfaction with various state court rulings over a period of more than nineteen years. The Court doubts Plaintiffs are able to re-state their allegations in a manner that could circumvent the immunities to which many of Defendants are entitled.

Nevertheless, the Court "construe[s] pro se pleadings liberally," *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018), and dismissals for lack of subject matter jurisdiction are entered without prejudice. The Court therefore dismisses Plaintiffs' claims without prejudice. However, Plaintiffs are forewarned that failure to comply with this Order in any future amended pleading—**to be filed, if filed, in a separate action**—may result in dismissal with prejudice and other appropriate sanctions, including placement on the restricted filer list as determined by any future court. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–58 (11th Cir. 2018) ("[I]f the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court

20

should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions."); *see also Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) ("[W]e never have stated that a district court *sua sponte* must allow a plaintiff an opportunity to amend where it dismisses a complaint without prejudice."); *Daker v. Bryson*, 841 F. App'x 115, 124 (11th Cir. 2020) (holding that, because dismissals of a *pro se* prisoner's civil rights complaints were without prejudice, "both district courts were within their discretion when they dismissed [the] claims *sua sponte* without first giving him leave to amend"); *Bazrowx v. Scott*, 136 F.3d 1053, 1054–55 (5th Cir. 1998) (affirming dismissal of *pro se* complaint without granting leave to amend where dismissal was without prejudice).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   The Clerk's Motion to Lift the Stay **[ECF No. 81]** is **GRANTED**.

2.   Defendants' Motions to Dismiss **[ECF Nos. 30, 31, 36]** are **GRANTED**.

3.   The Private Defendants' Motion to Deem Motion to Dismiss Amended Complaint Timely Filed **[ECF No. 37]** is **GRANTED** *nunc pro tunc*.

4.   The Corrected Amended Complaint **[ECF No. 16]** is **DISMISSED** without prejudice.

5.   The Clerk of Court is **DIRECTED** to **CLOSE** this case.

6.   All pending motions are **DENIED** as **MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 25 day of February 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge Sanchez
Mack Wells, *pro se*
Maurice Symonette, *pro se*
All Counsel of Record

21